**Herman THEUNISSEN and Ann Theunissen, Plaintiffs–Appellants,**

**v.**

**Sid MATTHEWS d/b/a Matthews Lumber Transfer, Defendant–Appellee.**

No. 90–1647.

United States Court of Appeals,
Sixth Circuit.

Submitted March 22, 1991.

Decided June 24, 1991.

John D. Tallman, Grand Rapids, Mich., for plaintiffs-appellants.

Thomas L. Misuraca, David M. Shafer, Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, Mich., for defendant-appellee.

Before KRUPANSKY and NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Herman and Ann Theunissen, Plaintiff–Appellants in this personal injury suit, appeal the district court's dismissal of their action for lack of personal jurisdiction over Defendant–Appellee Sid Matthews, a Canadian lumber yard operator. On appeal, the Theunissens do not challenge the rules of law applied by the district court; indeed, they concede that the court accurately stated the substantive law governing the issue. Rather, they argue that in reaching its decision on the question of jurisdiction, the court below improperly decided disputed

questions of fact based upon the affidavits alone. We agree, and for the reasons that follow we reverse and remand.

## I.

Herman Theunissen (Theunissen or Appellant) is a truck driver for Direct Transit Lines, Inc., a trucking company based in Grand Rapids, Michigan. On March 10, 1988, he traveled to Matthews Lumber Transfer, located in Windsor, Ontario, Canada, to pick up a load of lumber destined for Weyerhaeuser Co. in Westland, Michigan. During the loading, his hand was crushed by a "hi-lo", a forklift-type machine operated by an employee of Matthews Lumber.

After the accident, Theunissen filed suit against Matthews Lumber in Kent County, Michigan, Circuit Court. Matthews removed the case to the United States District Court for the Western District of Michigan and moved for dismissal. Theunissen voluntarily dismissed the action and re-filed it in the Eastern District of Michigan, casting it as an action against Sid Matthews (Matthews or Appellee), a sole proprietor doing business as Matthews Lumber.

On February 13, 1990, Matthews again moved to dismiss the action under Rule 12(b)(2) of the Federal Rules of Civil Procedure, asserting the district court lacked personal jurisdiction over him, and alternatively, under the doctrine of forum non conveniens. In support of this motion, he filed an affidavit which, in short, disclaimed almost any jurisdictional contact with the state of Michigan. Matthews' affidavit stated that he was a citizen of Canada—not of the United States; that his business, a sole proprietorship, was located wholly within Windsor, Ontario, Canada; that it had no locations or property in the United States and employed no persons in the U.S.; that it had no bank accounts or other accounts in the U.S. and paid no taxes here; did not advertise in the U.S.; held no license to engage in business in the U.S. and conducted no business here. It further stated that the forklift involved in Theunissen's injury had been manufactured by a Canadian company and was leased from a Canadian company. Matthews stated that his sole contacts with the U.S. were a telephone listing in the Detroit yellow pages directory and a post office box in Royal Oak, Michigan.[1]

Three weeks later, Theunissen filed his opposition to Matthews' motion, in support of which he submitted his own affidavit and that of Ms. Doreen Montee, his attorney's secretary. Theunissen's affidavit repeated that on the day of his injury he was working for Direct Transit and was scheduled to pick up lumber for delivery to Weyerhaeuser. Theunissen stated that he picked up lumber from Matthews for delivery "to customers of ... Matthews in the State of Michigan several times before his injury." He also stated "on information and belief" that during 1988 and the first nine months of 1989 other Direct Transit drivers picked up 186 loads of lumber from Matthews "at [Matthews'] request" for delivery to "customers of ... Matthews located in the United States, [including some] in the State of Michigan." Finally, he stated, again on information and belief, that other Michigan trucking companies picked up loads for delivery to Matthews' "customers" in Michigan and elsewhere in the United States and that Matthews did conduct business within the United States. Doreen Montee's affidavit stated that she had called the post office where Matthews' U.S. post office box was located, and that a postal worker gave a Michigan address for Matthews.[2]

---

1. When dialed, the telephone number rang through to Matthews' place of business in Windsor, Ontario. The directory listing appeared in the smallest available type and was not accompanied by any other advertising. A copy of the listing was attached to the affidavit. Matthews' affidavit stated that the post office box in Royal Oak was opened in order to receive mail from the United States expeditiously.

2. Ms. Montee's affidavit states that "she called the Oak Park Michigan Post Office in an attempt to gain more information about the post office box of the Defendant ..." and "... that she was told by a postal worker at the Oak Park Post Office that Mr. Matthews had a residence address of 23840 Majestic, Oak Park, Michigan 48237." In his Brief, Matthews disputes this assertion suggesting "that Ms. Montee apparent-

With his reply to Appellant's opposition, Matthews submitted a second affidavit which reasserted his Canadian citizenship; stated his address in Windsor, Ontario, Canada; and clarified in more detail how his business operates. Specifically, he stated that Matthews Lumber Transfer consisted of a lumber reloading business and storage yard. He explained that his customers were wood wholesalers who purchased lumber from mills in Canada and arranged for its shipment to his yard for unloading and storage pending resale. According to Matthews, when the wholesaler found a buyer, the wholesaler, not Matthews, made arrangements for the pick up and delivery of the lumber from Matthews' yard to its ultimate destination. Matthews stated that neither he nor his company assumed ownership of the lumber at any point during the transactions; that he had no control over where it came from or where it ultimately was shipped; and had no contact with the wholesalers' customers.

Additionally, Matthews explained that the address in Michigan that the postal worker gave as Matthews' residence belonged to a former girlfriend whom Matthews had asked to open the post office box for him. Matthews stated that the girlfriend made the arrangements for the box as a favor to him and apparently gave her own address rather than his when the postal worker asked for a residence address for its records. Matthews stated that he kept no property at the address and had not dated the woman for some time.

On April 16, 1990, the district court held a hearing on Matthews' motion to dismiss. At the hearing, the court expressed the view that it was without personal jurisdiction over Matthews based upon the facts presented in the parties' affidavits. Theunissen then requested time for further discovery to investigate the exact nature of Matthews' business. The court initially denied this request stating that Theunissen had had enough time for discovery. Then the court reconsidered, offering

> if you can cite me the case that you think closest approximates the circumstances here that you think allows for long arm jurisdiction, I'll look at it. If that case persuades me that I should give you a chance at discovery, I'll do it. I want to know the case you rely on for precedent.... I think ... the showing that has been made thus far is so minimal that it would be an abuse to allow the discovery.

Theunissen offered no citation to support further discovery. The court stated that it mattered little that Theunissen believed Matthews had hired his employer, Direct Transit, because the trucking company merely picked up lumber in Windsor and brought it back to the United States. The court concluded these facts did not establish that the Canadian firm was doing business in the United States and not merely in Canada.

After the hearing, Appellant filed the affidavit of Eugene Fowler, Direct Transit's Administrative Manager. Fowler stated he had searched the company's computerized business records and that they confirmed Direct Transit had picked up 252 loads of lumber from Matthews' yard between July 1988 and April 1990. He further stated that Matthews was the company's customer on 10 of those shipments. To this affidavit, Theunissen attached copies of the shipping orders for eight of the ten shipments. The copies of these invoices, included as exhibits in the record, are of poor quality; however, it appears that Matthews' name may be found on only two of the eight documents.

On May 10, 1990, the court entered a memorandum and order dismissing the action for lack of personal jurisdiction over the defendant. At the outset, the court made a series of factual findings that largely adopted Matthews' assertions regarding the operation of his business.

ly meant to say that she telephoned the post office which serves Royal Oak, Michigan, not Oak Park, Michigan, since [Matthews'] post office box is located in Royal Oak, not Oak Park." Though it did not make an express finding to this effect, the district court appears to have resolved this factual dispute by crediting the explanation Matthews offered in his second affidavit.

Concerning Theunissen's affidavit, the court stated:

> [It] contains statements of fact that ordinarily might establish that Matthews Lumber maintains other contacts with the state of Michigan and, perhaps, other states.... However, given Matthews' uncontroverted affidavit explaining the nature of his business, the Court finds that these contacts do not exist.

In favor of the "plausible" and "uncontroverted" explanation Matthews offered in his affidavit, the lower court also discounted Theunissen's assertion, supported by the Montee affidavit, that Matthews maintained a residence in Oak Park, Michigan. Finally, the district judge found the Fowler affidavit and its accompanying shipping orders only confirmed Matthews' account of his business operations. While acknowledging the Fowler affidavit indicated Matthews had paid Direct Transit for the shipment of ten loads of lumber into the United States, the court seemed dissatisfied by Appellant's failure to explain why Matthews had not paid for the other 242 shipments Direct Transit had picked up from Matthews Lumber Transfer.

Finding all of the foregoing asserted contacts nonexistent, the court examined whether the directory listing and the post office box together constituted sufficient contacts to sustain limited personal jurisdiction over Matthews. It concluded these contacts did not suffice because they failed to indicate that Matthews had purposefully availed himself of the privilege of acting or causing consequence in Michigan. Thus, the court concluded it was without jurisdiction. Theunissen filed his notice of appeal on May 29, 1990 to protest the denial of his motion for discovery and the dismissal of his action.

## II.

 We first consider the dismissal for lack of personal jurisdiction. The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled. *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th Cir.1989). The plaintiff bears the burden of establishing that jurisdiction exists. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1141 (1936); *accord Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir.1988); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir.1974). Additionally, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Weller*, 504 F.2d at 930. Accordingly, the parties have together submitted a total of five affidavits in support of their respective positions. The question before this Court largely turns upon the treatment to be accorded to these affidavits within the particular context of a dismissal motion based on Rule 12(b)(2) of the Federal Rules of Civil Procedure.

 Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions. *Serras*, 875 F.2d at 1214. The court has discretion to select which method it will follow, and will only be reversed for abuse of that discretion. *See Michigan Nat. Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir.1989); *Serras*, 875 F.2d at 1214. However, the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal. *Serras*, 875 F.2d at 1214. The record and the text of the order in this case plainly indicate that the district court reached its decision based upon the parties' affidavits. The court expressly denied Appellant's request for further discovery and apparently received no testimony or other evidence at the hearing on the matter. Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal. *Id.; Am. Greetings Corp.*, 839 F.2d at 1168–69 (6th Cir.1988); *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th

Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981).

■ The court's treatment of a motion under Rule 12(b)(2) mirrors in some respects the procedural treatment given to a motion for summary judgment under Rule 56. For example, the pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff. *Serras*, 875 F.2d at 1214; *Welsh*, 631 F.2d at 439. In sharp contrast to summary judgment procedure, however, the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal. *Serras*, 875 F.2d at 1214; *accord Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir.1981). We adopted this rule in *Serras* in order to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts, as the Appellee has done in the case before us. *Id.; accord Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). In *Serras*, we stated that the defendant who alleges facts to defeat jurisdiction has recourse to the court's discretionary authority to hold an evidentiary hearing if he disputes the plaintiff's factual assertions. *Serras*, 875 F.2d at 1214.

■ In the opinion and order on appeal before us, the district court acknowledged that Theunissen's affidavit "contain[ed] statements of fact that ordinarily might establish that Matthews Lumber maintains [jurisdictional contacts] with the state of Michigan...." These statements included the allegations that the defendant entered contracts for carriage with Theunissen's employer and other trucking firms in the United States, maintained business contacts with U.S. companies that received wood from his yard, and had a residence in Michigan that would sustain personal jurisdiction.

Deciding the issue upon the affidavits as he did, the district judge was obligated to examine each of these factual allegations notwithstanding Matthews' contrary assertions. *Michigan Nat. Bank*, 888 F.2d at 466; *Serras*, 875 F.2d at 1214. *But cf. Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1239 (6th Cir.) (court referred to "uncontroverted" affidavits of defendant alien corporation in finding absence of jurisdictional contacts), *cert. denied*, 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981). Yet, in each instance, the court relied upon Matthews' "uncontroverted" affidavit to find summarily that the alleged contact did not exist. In doing so, the court erred. Dismissal was only proper if all of the specific facts Theunissen alleged collectively failed to state a *prima facie* case for jurisdiction under the appropriate standards. Because the district court erroneously held the alleged business contacts did not exist, it did not subject them to this analysis. Therefore, we now do so.

■ A federal district court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *In–Flight Devices Corp. v. Van Dusen Air, Inc.* 466 F.2d 220, 224 (6th Cir.1972). However, constitutional concerns of due process limit the application of this state law. *Welsh*, 631 F.2d at 439.

## A.

■ We begin by examining the relevant Due Process considerations, recognizing that a defect of this type would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it. The relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *accord Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 380 (6th Cir.1968). Histori-

cally, we have applied three criteria to guide this determination:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1299 (6th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990) (citing *Southern Machine Co.,* 401 F.2d at 381). However, an additional concern arises when the case involves a non-resident *alien* defendant as it does here. In such circumstances, the Supreme Court has directed us to undertake the reasonableness inquiry giving special weight to the "unique burdens placed upon one who must defend oneself in a foreign legal system." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92, 105 (1987). Scrutinizing the *Southern Machine* and *Asahi Metal* requirements solely against the backdrop of Appellant's affidavits and pleadings, we conclude they are satisfied.

■ Purposeful availment by the defendant of the privilege of acting in, or causing consequence in, the forum state is "the *sine qua non* of *in personam* jurisdiction." *Southern Machine Co.,* 401 F.2d at 381–82. Where, as in the case before us, the action arises from conduct of the non-resident that physically injures the plaintiff outside the forum, the typical claim has been that the non-resident defendant has caused consequences in the forum in the form of the injury itself and related medical treatment and expenses.[3] The Michigan courts and the federal district courts have uniformly rejected this argument.

*Clavenna v. Holsey,* 81 Mich.App. 472, 265 N.W.2d 378 (1978); *accord Amburn v. Harold Forster Industries, Ltd.,* 423 F.Supp. 1302 (E.D.Mich.1976); *Price v. Shessel,* 415 F.Supp. 306 (E.D.Mich.1976); *Storie v. Beech Aircraft Corp.,* 417 F.Supp. 141 (E.D.Mich.1976).

These cases reason that the "consequence" is the tort claim itself and it must arise within Michigan as a result of the defendant's extra-territorial action: where the injury occurs outside the state, the cause of action—the consequence—does also. *Clavenna v. Holsey,* 81 Mich.App. 472, 265 N.W.2d 378 (1978) (discussing *Storie,* 417 F.Supp. at 145). *Storie* and *Clavenna* were premised on the theory that subjecting the non-resident to jurisdiction based upon no forum contacts other than the plaintiff's injury would be fundamentally unfair where the injury itself occurred outside the forum state.

However, these cases distinguish instances, also present here, where jurisdiction is premised on transacting business noting that in such circumstances "the non-resident ... usually can be said to be purposefully availing himself ... of the privilege of conducting business in Michigan." *Clavenna,* 81 Mich.App. 472, 265 N.W.2d 378, 379 (1978). Where the defendant has undertaken such contacts, he may reasonably foresee being haled into the forum to defend himself. This is particularly so when the plaintiff's injury, although a "consequence" occurring outside the forum, is also a consequence of the defendant's business transactions in the forum.

■ Assuming as we must that Theunissen's allegations are true, Matthews has maintained a residence in Michigan and contracted with common carriers and other firms. These allegations alone might suffice to establish purposeful availment. We

---

**3.** *See, e.g., Clavenna v. Holsey,* 81 Mich.App. 472, 265 N.W.2d 378 (1978); *accord Price v. Shessel,* 415 F.Supp. 306 (E.D.Mich.1976); *Storie v. Beech Aircraft Corp.,* 417 F.Supp. 141 (E.D.Mich. 1976); *Amburn v. Harold Forster Industries, Ltd.,* 423 F.Supp. 1302 (E.D.Mich.1976). These cases do not directly address the due process question, but construe a provision of the Michi-

gan long arm that mirrors the *Southern Machine* requirements. The statute provides for limited personal jurisdiction over an individual based upon, *inter alia,* "[t]he doing or causing an act to be done, *or consequences to occur, in the state* resulting in an action for tort." Mich. Comp.Laws Ann. § 600.705(2) (West 1981) (emphasis added).

believe the causal nexus between the business contacts and Appellant's injury only serves to reinforce this conclusion. We see no reason why the mere fact that Appellant sustained his injury across the border in Canada should disturb this finding.

The *Southern Machine* test next requires that the cause of action arise from the defendant's forum activities. The foregoing discussion amply illustrates that this requirement is also met. Appellant's cause of action—his injured hand—resulted from the conduct of Matthews' employee while Appellant was present at his place of business pursuant to what Appellant alleges was a contract for carriage that Matthews had executed with Direct Transit. Thus, but for Matthews' alleged business contacts with his employer, Theunissen would have sustained no injury.

Finally, in the light of the Supreme Court's decision in *Asahi Metal*, we must inquire whether Matthews' alleged contacts bear a substantial enough connection to Michigan to make the exercise of jurisdiction reasonable. As a preliminary observation, we reiterate our previously announced view that an inference of reasonableness arises where the first two criteria are met and that "only the unusual case will not meet this third criterion." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir.1988) (quoting *First Nat. Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982)).

In *Asahi Metal*, the Supreme Court determined the reasonableness of exercising jurisdiction over an alien defendant by balancing "the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief," giving due regard to " 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.' " *Asahi Metal Indus. Co.*, 480 U.S. at 113, 107 S.Ct. at 1033, 94 L.Ed.2d at 105 (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).

In *Asahi Metal*, a California resident brought a product liability action in California state court against the Taiwanese manufacturer of a defective motorcycle tire. 480 U.S. at 105–06, 107 S.Ct. at 1028–29. The defendant impleaded the Japanese manufacturer of the tire valve stem assembly, Asahi Metal Industries Co., seeking indemnification. *Id.* at 106, 107 S.Ct. at 1029. The primary suit was settled and dismissed, leaving only the third-party action. *Id.* The Supreme Court held the exercise of personal jurisdiction by California over Asahi would be unreasonable and incompatible with the requirements of the fourteenth amendment. *Id.* at 116, 107 S.Ct. at 1034.

Weighing each of the aforementioned factors, the Court determined that the exercise of jurisdiction would subject Asahi to the severe burdens of having to travel from its headquarters in Japan to California to defend itself before a foreign legal system. *Id.* at 114, 107 S.Ct. at 1033. The nature of the parties also diminished the weight of the countervailing interests. Settlement of the primary action satisfied the plaintiff's interest in obtaining relief. The fact that the remaining third-party plaintiff was not a California citizen significantly dissipated California's interest in the case. *Id.* The valve stems had been manufactured in Japan and shipped to Taiwan and the transaction between the firms occurred in Taiwan. *Id.*

Finally, in view of the international flavor of the case, the Court modified its consideration of the interests of the " 'several States' " to "consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by the California court." *Id.* at 115, 107 S.Ct. at 1033. The Court stated that these interests would be different in each case, but added that they would "be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction ... and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum state." *Id.*

Applying this reasoning to the instant case, it is apparent that the exercise of jurisdiction would be reasonable. Unlike in *Asahi Metal,* the burdens on Matthews would be comparatively slight in this case. Windsor, Ontario is only approximately ten miles from Detroit. Moreover, the judicial systems of Canada and the United States are rooted in the same common law traditions. By contrast, the interests of the plaintiff and the State of Michigan are quite high. Theunissen is a citizen of Michigan seeking relief for his injury. Michigan has interests in providing a forum for him to resolve that dispute as well as in regulating the conduct of foreign businesses trading in Michigan through the busy corridor between Detroit and Windsor.

Notwithstanding its admonition to scrutinize carefully the reasonableness of asserting jurisdiction, the Supreme Court also stated that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* at 114, 107 S.Ct. at 1033. Assumed to be true, the jurisdictional contacts Theunissen has advanced in his affidavits establish the requisite minimum contacts; in view of the comparative burdens and interests of the parties the exercise of limited personal jurisdiction by Michigan would be reasonable. *Cf. Noel v. S.S. Kresge Co.,* 669 F.2d 1150 (6th Cir.1982) (approving exercise of personal jurisdiction in an indemnification action by a U.S. retailer over a Japanese trading company that sold Korean manufactured defective pliers to the retailer). Thus, we find that Appellant's factual allegations, viewed in his favor and without regard to Matthews' statements to the contrary, do *prima facie* satisfy the due process requirements for personal jurisdiction.

**B.**

We next assess whether Appellant's allegations brought Matthews' within the scope of Michigan's long-arm statute. As a preliminary matter, we note that this Circuit historically has understood Michigan to intend its long-arm statute to extend to the boundaries of the fourteenth amendment. *See Chandler v. Barclays Bank PLC,* 898 F.2d 1148, 1150–51 (6th Cir.1990); *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990); *Michigan Nat. Bank v. Quality Dinette, Inc.,* 888 F.2d 462, 464 (6th Cir.1989); *Hertzberg & Noveck v. Spoon,* 681 F.2d 474, 478 (6th Cir.1982); *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1236 (6th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981). This understanding rests upon the decision of the Michigan Supreme Court in *Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623 (1971), stating that the long arm "represents an attempt on the part of the Michigan Legislature to expand to its full potential *limited* personal jurisdiction of Michigan courts over non residents." *Id.* (footnote omitted, emphasis in original). However, three considerations weigh against applying this view of co-extensiveness in all instances.

First, close examination of *Sifers* reveals that this statement attached only to limited personal jurisdiction premised upon the non-resident defendant's transaction of business within the state. *Id.* 188 N.W.2d at 624–25. As will be discussed, the conduct of business in the state is only one of several "relationships" identified in Michigan law that can give rise to limited personal jurisdiction. *Sifers* did not address the other bases for jurisdiction. Second, Appellee Matthews has directed our attention to a recent decision by the Michigan Supreme Court that appears to qualify the widely held view that the long arm is co-extensive with due process, emphasizing that the decision in *Sifers* "rested upon the 'exercise [of] jurisdiction *to the extent indicated in the statute....'* [*Sifers v. Horen,* 385 Mich. 195, 198, 188 N.W.2d 623 (1971)] (Emphasis supplied.)" *Witbeck v. Bill Cody's Ranch Inn,* 428 Mich. 659, 666 n. 3, 411 N.W.2d 439, 443 n. 3 (1987) (emphasis in original). In *Witbeck,* the Michigan court decided the jurisdictional issue on due process grounds making a discussion of the long arm unnecessary; nevertheless, this statement suggests that an

independent consideration of the long arm would be necessary where due process had been satisfied. Finally, other Michigan cases suggest that the scope of long arm limited personal jurisdiction is somewhat more restricted when the action is premised on grounds other than the transaction of business, particularly in tort claims for personal injury. *See LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 n. 4 (6th Cir.1989); *Rann v. McInnis,* 789 F.2d 374, 377 (6th Cir.1986) (citing *Woodward v. Keenan,* 88 Mich.App. 791, 279 N.W.2d 317 (1979)); *see also Clavenna v. Holsey,* 81 Mich.App. 472, 265 N.W.2d 378, 380 (1978).

The case before us presents a personal injury action rooted in alleged business transactions between the non-resident defendant and firms in Michigan. The facts thus present a potential conflict between the competing policies governing the exercise of limited personal jurisdiction in cases based on tort theories and those based on the transaction of business. In view of these competing policies, and our immediate objective—to determine whether Appellant has stated a *prima facie* case for personal jurisdiction—we believe a full discussion of the long arm analysis is in order.

Michigan, the forum for the pending appeal, subjects non-resident real persons to the limited jurisdiction of its courts in seven enumerated circumstances. Mich.Comp. Laws Ann. § 600.705 (West 1981).[4] Theunissen relies on two of these grounds, provided for in section 600.705 as follows:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> \* \* \* \* \* \*
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant. . . .

Mich.Comp.Laws Ann. § 600.705(1), (5) (West 1981). The facts Theunissen alleged in his affidavits clearly satisfy each of these provisions.

Our conclusion that due process has been satisfied leads us to conclude that Theunissen has also met his burden under section 600.705(1). *See Sifers v. Horen,* 385 Mich. 195, 195, 188 N.W.2d 623, 623 (1971). Furthermore, we believe cases construing this statute provide an independent basis for this holding.

In construing identical language in a companion long arm statute applicable to non-resident corporations,[5] the Michigan

---

**4.** At this point, it is useful to distinguish the concept of general personal jurisdiction from limited personal jurisdiction. General personal jurisdiction provides a court possessing proper subject matter jurisdiction with the authority "to enter a binding personal judgment [over the defendant] regardless of where the facts or circumstances giving rise to the cause of action may have occurred, in the state or out." *See* Mich.Comp.Laws Ann. Chapter 7, Practice Commentary at 606 (West 1981). By contrast, limited personal jurisdiction confers power upon the court to enter personal judgments against the defendant only upon claims which arise out of the act(s) establishing the jurisdictional connection between the defendant and the forum. *Id.*

Michigan subjects individuals to general personal jurisdiction of its courts in three instances: (1) when the defendant is present in the state at the time of service of process; (2) when the defendant is domiciled in the state at the

time process is served; and (3) when the defendant has consented to jurisdiction. Mich.Comp. Laws Ann. § 600.701 (West 1981). In the case before us, none of the parties suggests that Matthews is subject to general personal jurisdiction. Although Theunissen alleged that Matthews maintained a residence in Michigan, he alleges neither that Matthews actually lived at the residence for any period nor that he exhibited the intent to remain necessary to deem him a domiciliary of Michigan. Since there is no allegation that Matthews consented to jurisdiction or received service of process in Michigan, no basis for general jurisdiction exists. Accordingly, we limit our discussion to Michigan's limited personal jurisdiction long arm.

**5.** Mich.Comp.Laws § 600.715(1) subjects a corporation to the limited personal jurisdiction of its courts when the corporation or its agent has engaged in "(1) The transaction of any business within the state."

Supreme Court stated that "[t]he word 'any' means just what it says. It includes 'each' and 'every'.... It comprehends the 'slightest'." *Lanier v. Am. Board of Endodontics,* 843 F.2d 901, 905–06 (6th Cir.) (quoting *Sifers,* 385 Mich. at 199 n. 2, 188 N.W.2d 623 (1971)), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). This construction applies with equal force to section 705. *Hertzberg & Noveck v. Spoon,* 681 F.2d 474, 478 (6th Cir.1982). We believe this broad construction would extend the long arm to base jurisdiction on Matthews' shipment contract with Direct Transit alleged in Appellant's own affidavit. *Cf. Lanier,* 843 F.2d at 905–06. In *Lanier,* we held that the non-resident defendant, an Illinois-based dental specialty organization, was subject to limited personal jurisdiction under the Michigan long arm although its only contacts with the state were its act of sending the plaintiff (at plaintiff's request) an application for certification by the Board and occasional correspondence and telephone calls concerning the status of the plaintiff's application. *Id.* at 905. Stating that the statute was satisfied "if defendant conducted even the slightest act of business in Michigan," *id.,* we emphasized that "the Board's contacts with Dr. Lanier in Michigan were for purposes of establishing a business relationship[.]" *Id.* Thus, we concluded the contacts constituted the transaction of some business which provided the necessary predicate for limited jurisdiction where the cause of action, a sex discrimination claim, arose out of the business transacted. *Id.* at 908.

Similarly, in the case before us, Appellant asserted that Matthews contracted Appellant's employer for the shipment of lumber from Matthews' business to recipients in Michigan. He asserts in his affidavit that he was engaged in making such a shipment, to Weyerhaeuser Company, when he sustained his injury. Moreover, the Fowler affidavit identifies at least ten separate other contracts for such shipments. Although the Fowler affidavit does not identify the specific contract which allegedly took the Appellant to Matthews Lumber Transfer in March, 1988, viewed in a light most favorable to Theunissen, it clearly lends credence to his assertion that such a contract existed. While we are satisfied that each of these alleged contracts would constitute a separate act of transacting business under the sweeping scope of the Michigan long-arm, we need not go this far. Theunissen would not have been at Matthews Lumber, and would not have sustained his injury, but for his assignment to perform the alleged carriage contract on his employer's behalf. Viewed in this light, Theunissen's allegations *prima facie* indicate that the cause of action arose from the business alleged to have been transacted thereby validating jurisdiction under section 600.705(1).

Even if the ten shipment contracts were not alone sufficient, the scope of the statute certainly supports the view that Michigan would find a foundation for jurisdiction by combining Matthews' alleged contracts with the U.S. trucking firms with his alleged contracts with the Michigan-based recipients of the wood. *See Hertzberg & Noveck,* 681 F.2d at 478 (discussing the Michigan cases). The fact that Theunissen's injury arose from the performance of one of these alleged contracts reinforces this conclusion. *Id.*

Finally, Theunissen's allegations that the recipients of the lumber were Matthews' "customers" suggest Matthews had contracts to furnish materials—lumber—in the state within the scope of section 600.705(5). These contracts, if they exist, would provide an alternative basis for long-arm jurisdiction where the cause of action arose from their performance as it does here. Consequently, we find Theunissen has made a *prima facie* showing for jurisdiction under section 600.705.

The facts as alleged in Theunissen's affidavits satisfy both the requirements of the fourteenth amendment and the relevant provisions of the long arm statute. Therefore, based upon the affidavits alone and without regard to Matthews' contrary assertions, dismissal was inappropriate. *See, e.g., Michigan Nat. Bank v. Quality Dinette, Inc.,* 888 F.2d 462, 466 (6th Cir.1989).

Accordingly, we reverse the judgment of dismissal entered by the district court.

### C.

In each of the preceding discussions, our analysis has been qualified by the caveat that Appellant's allegations must be true. Appellant's affidavit asserts that Matthews hired U.S. trucking firms to haul wood from his business to his customers in Michigan and elsewhere. *Prima facie,* Appellant's assertions, if true, would satisfy the requirements of the long arm statute and the requirements of due process. However, Matthews' affidavits contradict both of Appellant's assertions—first, as to the identity of his customers, and second, as to who hired the trucking firms. If these assertions are true, it appears unlikely that sufficient contacts would exist to sustain jurisdiction.

██ As the foregoing discussion amply demonstrates, the affidavits of the parties presented two factual disputes central to resolving the issue of the existence of the business contacts Appellant alleged Matthews maintained with Michigan. The procedural course selected by the district court foreclosed consideration of the Defendant's representations. Matthews' affidavits do offer plausible explanations that serve to undermine Appellant's allegations. In view of the directly contradictory nature of the parties' assertions, an evidentiary hearing is necessary to determine which factual account is accurate. *Serras,* 875 F.2d at 1214. We therefore remand the case for such a hearing. Of course, in such a hearing the Appellant must establish by a preponderance of the evidence that jurisdiction exists. *Id.* Because the court could not properly resolve this issue on the affidavits alone, to do so constituted an abuse of discretion.

### III.

We now turn our attention to the district court's denial of Appellant's motion for discovery. As discussed previously, a district court faced with a motion to dismiss for lack of personal jurisdiction over the defendant may permit the plaintiff further discovery to investigate jurisdictional facts. *Serras v. First Tennessee Bank Nat. Ass'n.,* 875 F.2d 1212, 1214 (6th Cir.1989); *see also Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1240 (6th Cir.) (discovery may be appropriate when a defendant moves to dismiss for lack of jurisdiction), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981). However, the scope of discovery is a matter committed to the district court's sound discretion, and district court rulings on discovery matters are subject to reversal only for abuse of that discretion. *Chrysler Corp.,* 643 F.2d at 1240.

██ In the case before us, the district court determined that Theunissen had ample time prior to the hearing on the dismissal motion to conduct the discovery necessary to establish whether jurisdiction existed. Indeed, from the time Theunissen filed his Complaint on November 3, 1989 until the hearing on April 16, 1990, he had five and one-half months to conduct discovery. Theunissen received notice of the scheduled hearing on February 21, 1990, and was served with Sid Matthews' affidavit refuting his jurisdictional allegations on March 22, 1990, fewer than three weeks after Theunissen filed his own affidavits in support of jurisdiction. Thus, for at least three and one-half weeks prior to the hearing, Theunissen knew the specific points in dispute concerning Matthews' contacts, yet did not pursue discovery until the day of the hearing itself. Moreover, the district judge modified his denial of discovery by soliciting authority from Appellant's counsel in support of further discovery. Counsel offered no cases in reply to the court's request, nor did he offer any explanation for this lapse. The district court stated its view that it would be an abuse of discretion to grant discovery. In view of the foregoing facts, we cannot say the district court abused its discretion in denying the motion for further discovery. Therefore, upon remand of the jurisdictional issue, the court shall not be required to permit further discovery, but retains the discretion to do so if it chooses.

## IV.

For the foregoing reasons, we RE-VERSE the order of the district court dismissing Appellant's case, and REMAND for further proceedings not inconsistent with this opinion.

DAVID A. NELSON, Circuit Judge, dissenting.

Defendant Sid Matthews may or may not have engaged, on occasion, in the transaction of business within the State of Michigan. As I read the affidavits, however, they make it plain that the plaintiffs can offer no competent evidence to show that the claims asserted in their complaint are claims "arising out of an act" that created a "relationship" (*i.e.* "[t]he transaction of any business within the state ... [or] ... a contract for services to be rendered or for materials to be furnished in the state by the defendant") capable of supporting the exercise of limited personal jurisdiction over Mr. Matthews pursuant to Mich.Comp. Laws § 600.705(1) or (5). A showing that the claim asserted is one "arising out of" such an act is essential to the exercise of limited jurisdiction. Accordingly, and because there is no basis for the exercise of general personal jurisdiction under Mich. Comp.Laws § 600.701 (a statute applicable only when the individual is present in the state, is a Michigan domiciliary, or has consented to be sued in Michigan), I think the district court was correct in dismissing the action for lack of jurisdiction over Mr. Matthews' person.

The affidavit executed by plaintiff Herman Theunissen alleges, "on information and belief," that drivers for Direct Transit Lines, Theunissen's employer, picked up 122 loads of lumber from Matthews in 1988 at Matthews' request. For reasons to be explained shortly, I think it is appropriate to read Mr. Theunissen's affidavit in the light of the record as a whole. Read in this light, the affidavit does not establish that Matthews had contacted Direct Transit, in Michigan or elsewhere, to arrange for pickup of the particular shipment out of which the March 8th accident arose. It does not establish that Matthews had contacted Di-rect Transit to arrange for pickup of any other shipment. It does not establish that Matthews had entered into a contract of carriage with Direct Transit for the shipment out of which the accident arose. And it does not establish that as of March 8, 1988, Matthews had *ever* entered into a contract of carriage with Direct Transit.

The affidavit contains a number of generalized references to "customers" of Matthews in Michigan, but does not specifically allege that Weyerhaeuser Company—the consignee of the lumber that Mr. Theunissen was picking up in Canada at the time of his accident—was a Matthews customer. The affidavit provides no reason to suppose that Mr. Theunissen would have had any way of knowing whose customer Weyerhaeuser, or any other consignee, really was. Mr. Matthews' subsequent affidavit shows, without contradiction, that in point of fact Matthews had no customers in the United States.

In his affidavit Mr. Matthews swears, among other things, that

"3. ... I do not hire or retain truckers or trucking firms to deliver materials to the United States.

4. I do not hire or pay for freight for delivery of materials to the United States in any way.

5. My business consists of the operation of a lumber reloading business and storage yard.

6. My customers are wholesalers who buy the lumber from mills located in Canada.

7. When my customer, the wholesaler, buys the lumber the mill arranges for its shipment to my yard.

8. The wholesaler contracts with me to unload the lumber and store it at my yard.

9. Neither I nor my company purchase the lumber or assume ownership of it in any way.

10. The wholesaler then sells the lumber to its customers, and arranges for pick-up and transportation from my yard to its ultimate location.

11. I have no control over where the lumber comes from and where it is going."

The affidavit of Direct Transit's Administration Manager, Eugene Fowler, represents the plaintiffs' only substantive response to Mr. Matthews' affidavit. The Fowler affidavit establishes that Direct Transit's computerized records reflect pickups of 252 loads of lumber from Matthews between July of 1988 and April 19, 1990. (This is perfectly consistent with Mr. Matthews' own evidence, of course—and quantified proof of pickups at the Matthews yard in Canada would not have established that Matthews transacted any business in Michigan in March of 1988 even if the proof had dealt with that time period.) The Fowler affidavit makes no attempt to show that Weyerhaeuser or any other U.S. lumber company was ever a "customer" of Matthews. The affidavit does go on to say that on ten of the loads picked up in Canada from and after July of 1988, Matthews paid Direct Transit's freight charges. Matthews is thus said to have been Direct Transit's customer as to those ten shipments. Bills of lading for eight of the ten shipments are attached, as the affidavit recites. Beyond stating that he has testified on personal knowledge and is a competent witness, Mr. Fowler says nothing further in his affidavit.

Every one of the eight bills of lading attached to the Fowler affidavit lists a company other than Matthews as shipper. Every one of them lists a company other than Weyerhaeuser as consignee. One of the bills appears to list Matthews Lumber Transfer as "broker;" three others bear the handwritten word "MATH," preceded by the letter "T" in a circle, both of which symbols have been added to a portion of the form that lists the consignee as Georgia Pacific Corp.; one bill of lading bears a handwritten instruction to bill Matthews for an "S/O chg." in the amount of $45; two (including one marked "T Math") say to bill Matthews without specifying the type of charge or the amount; and the remaining two documents contain no reference to Matthews at all. Not one of the eight bills of lading bears a date earlier than December 2, 1988—a date almost nine months after Mr. Theunissen's accident.

Assuming, contrary to what is suggested by the bills of lading themselves, that Matthews did pay Direct Transit for as many as ten of the pickups made at Matthews' yard in Canada subsequent to June of 1988, such payments (covering less than four percent of the total pickups during that time frame) would not show that Matthews ever made a sale to a customer in Michigan. Documentary evidence of a few post-accident payments to Direct Transit would refute Mr. Matthews' claim that he never made such payments, to be sure, but it would not affirmatively establish limited personal jurisdiction in this case. The question is not whether Mr. Theunissen's accident arose out of Direct Transit's transacting business in Canada, but whether it arose out of Matthews' transacting business in Michigan. On that question, it seems to me, the Fowler affidavit gives the plaintiffs no real help.

If defendant Matthews had moved for summary judgment under Rule 56, Fed.R. Civ.P., application of the summary judgment standards articulated by the Supreme Court in the *Celotex* trilogy[1] could only have resulted in judgment for Mr. Matthews. It is absolutely clear that under Michigan law "[t]he 'transaction of any business' in Michigan by the [defendant] would ... confer no limited personal jurisdiction upon the District Court unless the cause of action pleaded by the plaintiff arose out of the business transacted there." *Lanier v. American Bd. of Endodontics,* 843 F.2d 901, 908 (6th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). *Cf. Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623 (1971) (*"limited* jurisdiction ... exposes a non-resident to suit in Michigan only for a cause which arose out of the relationship serving as a basis for such jurisdiction....") The affi-

1. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

davits filed in this case simply do not show that the hand injury which Mr. Theunissen suffered while picking up the load of lumber consigned to Weyerhaeuser in March of 1988 arose out of a sale to Weyerhaeuser by Matthews, as opposed to a sale to Weyerhaeuser by a customer of Matthews. The affidavits do not show that the injury arose out of Matthews having called or written Direct Transit to arrange for the pickup, as opposed to a customer of Matthews having done so. And the affidavits do not show that the injury arose out of any other Michigan business relationship existing in March of 1988 between Mr. Matthews and Weyerhaeuser, or Direct Transit, or Matthews' former girl friend, or anyone else.

Although Mr. Matthews could have moved for summary judgment on the jurisdictional issue under Rule 56, Fed.R.Civ.P., he chose instead to move for dismissal under Rule 12(b)(2). In its procedural aspect, the latter rule mirrors the former—and under the circumstances presented in this case, I am not sure I understand why the treatment accorded the affidavits should be thought to differ substantially depending on which rule was cited by the moving party.

It is true that in *Serras v. First Tennessee Bank Nat. Ass'n,* 875 F.2d 1212 (6th Cir.1989), this court, relying on a pre-*Celotex* decision of the Court of Appeals for the Second Circuit, refused to look beyond a *prima facie* showing of jurisdiction presented in affidavits that the plaintiffs submitted in opposition to a motion by the defendant for dismissal under Rule 12(b)(2). But I do not understand the *Serras* panel to have based its decision on the fact that the defendant cited Rule 12(b)(2) rather than Rule 56. In stating its holding at 875 F.2d at 1215, in fact, the *Serras* court characterized the defendant's motion as a "motion for summary judgment"—and it is perfectly obvious that the court's holding would have been the same if the defendant really *had* moved for summary judgment.

Even if the *Serras* court had been willing to sanction use of the affidavits contradicting the *prima facie* showing of jurisdiction

made by the plaintiffs' affidavits, it is most unlikely that the court would have found no genuine issue as to any material fact. The question in *Serras* was whether the out-of-state defendant had or had not made false representations to the plaintiffs in Michigan, and the district court was "in clear error" when it looked to the defendant's affidavit and ignored the contrary assertions in the plaintiffs' affidavit. *Id.* at 1216. *"Particularly where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits,"* *Serras* observed, "a trial court should not require plaintiffs to mount 'proof which would, in effect, establish the validity of their claims and their right to the relief sought.'" *Id.* at 1215 (citation omitted, emphasis supplied).

The contrast between *Serras* and the case at bar is a sharp one. In the instant case the various affidavits can, for the most part, be reconciled with one another. Unless we are to accept allegations made by Mr. Theunissen on "information and belief," the facts asserted in the plaintiffs' affidavits are not disputed at all, aside from (1) the question whether Matthews paid the freight on a handful of shipments to consignees other than Weyerhaeuser some months after the accident, and (2) the question as to whose "customers" the consignees were, a subject on which affiant Theunissen did not indicate he was competent to testify. (Affiant Matthews, who clearly was competent to testify, showed that the consignees were not his customers; that showing stands unchallenged.) Far from being "intimately intertwined" with the question of Matthews' liability for the injury to Mr. Theunissen's hand, moreover, the jurisdictional facts have nothing whatever to do with the merits of the personal injury claim. Requiring the plaintiffs to mount proof of limited personal jurisdiction over the defendant would in no way require the plaintiffs to establish the validity of their tort claims and their right to the relief sought. Under these circumstances, even if the plaintiffs' affidavits could appropriately be read as showing, *prima facie,* grounds for the exercise of limited personal jurisdiction, I do not believe that

*Serras* or cases like it ought to have prevented the district court from deciding the jurisdictional issue on the basis of all five of the affidavits.