**MARKET/MEDIA RESEARCH, INC., Plaintiff–Appellant,**

**v.**

**UNION–TRIBUNE PUBLISHING COMPANY and Copley Press, Inc., Defendants–Appellees.**

No. 91–3371.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 5, 1991.

Decided Dec. 13, 1991.

Rehearing and Rehearing En Banc Denied Feb. 11, 1992.

Owen C. Neff (argued and briefed), Snyder, Neff & Chamberlin, Cleveland, Ohio, for plaintiff-appellant.

Beth Whitmore (argued and briefed), Arter & Hadden, Cleveland, Ohio, for defendants-appellees.

Before GUY, Circuit Judge, BROWN, Senior Circuit Judge, and CHURCHILL, Senior District Judge.*

BAILEY BROWN, Senior Circuit Judge.

This is a diversity action for breach of contract, fraud, conversion, and related torts. Plaintiff, Market/Media Research, Inc. ("MMR"), appeals from an order of dismissal for lack of *in personam* jurisdiction over Union–Tribune Publishing Co. ("Union") and Copley Press, Inc. ("Copley"). MMR also appeals the denial of its motion for reconsideration and leave to file an amended complaint. Because the Ohio district court did not err in its determination that due process requirements preclude the assertion of *in personam* jurisdiction over the Defendants and because the court did not abuse its discretion in denying the post-order motion, we AFFIRM.

## I

Plaintiff, MMR, an Ohio corporation located in Cleveland, is a marketing and management consulting firm that performs market research for retailers and newspapers. Defendants, Copley and Union, are, respectively, an Illinois corporation and one of its unincorporated operating divisions. The principal place of business of Copley, an interstate publishing conglomerate, is in La Jolla, California. Union publishes two daily newspapers in San Diego, California.

MMR's marketing services consist of surveying local households, performing a market analysis, and, based on its findings, generating a report that informs retailers of effective marketing and advertising strategies. After discussions with Robert Rhodes, president and sole shareholder of MMR, the Newspaper Advertising Bureau ("NAB") agreed to collaborate with MMR to promote a series of demonstration projects for major retailers. The projects were to be funded by local newspaper publishers. MMR and NAB selected the J.C. Penney Company ("Penney") as the retailer for whom to develop the first project, and Penney's Western Regional Marketing Director, Larry Walker, selected San Diego, California, as the site.

Walker discussed the project with Gerry Wilson, the marketing director for Union. Rhodes then telephoned Wilson to explain the details. Approximately one year after this initial contact, and at Rhodes' request, Wilson sent to Rhodes in Ohio reports of Union's current demographic research, and Rhodes sent Wilson a ten-page proposal and a detailed description of the Penney demonstration project.

The parties exchanged a series of telephone calls and correspondence, and Union expressed some interest in financing the project. Subsequently, MMR drafted a services agreement, but neither Copley nor Union ever executed it. MMR maintains, however, that Union orally promised to pay for a research study of San Diego County if Penney accepted the proposal and the newspapers deemed the project to be potentially profitable. MMR points to twenty-two contacts between MMR and Defendants, nine of which Union or Copley executives initiated. All contacts between the Defendants and MMR, however, were by telephone or mail, and the parties agree that Union and Copley do not generally engage in activities in Ohio.

MMR alleges that it obtained from Penney an initial commitment for $300,000.00 in additional advertising with Union. Thereafter, alleges MMR, it began to perform the services as set out in the services agreement. When MMR billed Union, Union disavowed any obligation to pay for MMR's services.

Asserting that under Ohio's long-arm statute the court had personal jurisdiction over Copley and Union, MMR filed suit in the United States District Court for the Northern District of Ohio. Among other

---

* The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

grounds for suit, MMR alleged breach of contract, fraud, conversion, unjust enrichment, and damage to MMR's business relationship with Penney. Pursuant to Federal Rule of Civil Procedure 12(b)(2), Copley and Union moved for dismissal for lack of personal jurisdiction. In the alternative, they moved to transfer the case to the Southern District of California.

Without holding an evidentiary hearing, the court determined that, on the undisputed record, the due process standards for the exercise of personal jurisdiction had not been satisfied.[1] It, therefore, granted the 12(b)(2) motion and overruled the motion for change of venue. The court reaffirmed its ruling by denying MMR's motion for reconsideration and for leave to file an amended complaint.

The issues presented on appeal are (1) whether, because of improper weighing of the written submissions before it, the district court erred in granting the 12(b)(2) motion; (2) whether the nature of the case required the court to hold an evidentiary hearing before ruling on the motion; and (3) whether the court abused its discretion by denying the motion for reconsideration and leave to file an amended complaint.

## II

### A

As we explained in *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212, 1216 (6th Cir.1989), the reach of the *in personam* jurisdiction of a district court is limited by the requirements of the Due Process Clause of the Fourteenth Amendment. In the instant case, the district court determined that it was without jurisdiction under the Ohio long-arm statute and, further, that Copley's and Union's contacts with Ohio were not such as would support jurisdiction under the Due Process Clause. Because we agree with the district court that assertion of jurisdiction in this case would not be consistent with due process, and because such a defect defeats jurisdiction regardless of the extent of

Ohio long-arm jurisdiction, we confine our analysis to an examination of the district court's assessment that haling Copley and Union into an Ohio court would violate the concept of " 'fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)).

As the party seeking the court's assertion of *in personam* jurisdiction, MMR bears the burden of showing that jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). MMR's burden is lessened, however, because the district court ruled on the Defendants' 12(b)(2) motion without calling for depositions or holding an evidentiary hearing. In such a case, to defeat a motion to dismiss, a party need make only a prima facie showing of jurisdiction. *Id.* Moreover, the court is required to " 'consider the pleadings and affidavits in the light most favorable to the plaintiff.' " *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir.1988) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981)).

### B

MMR does not contend that the Ohio district court has general *in personam* jurisdiction over Copley and Union. Rather, it submits that Copley's and Union's activities directed to the state of Ohio place the Defendants, only with respect to these claims, properly within the *in personam* jurisdiction of the court. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). Therefore, as we have noted in a number of cases, the threshold issue is whether, in their dealings with MMR, the Defendants "purposefully availed" themselves of "the privilege of acting in the forum state or causing consequence in the forum state."

---

1. The court also held that Copley's and Union's contacts with Ohio were insufficient to satisfy

Ohio Rev.Code Ann. § 2307.382(A), the Ohio long-arm statute.

*Theunissen,* 935 F.2d at 1460; *LAK, Inc. v. Deer Creek Enters.,* 885 F.2d 1293, 1299 (6th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990); *American Greetings,* 839 F.2d at 1169; *Southern Machine Co. v. Mohasco Indus.,* 401 F.2d 374, 381–82 (6th Cir.1968).

MMR contends that when the district court determined the issue of purposeful availment by Copley and Union, it disregarded MMR's pleadings and supporting affidavit and adopted a contradictory version of the jurisdictional facts as offered by Copley and Union. Copley and Union counter that, instead of making a prima facie showing of *facts* sufficient to establish purposeful availment, MMR's pleadings and affidavit state mere speculative inferences and erroneous conclusions of law. Comparing their 12(b)(2) motion to a motion for summary judgment, Copley and Union assert that the court, as it should have, weighed the evidence presented in the opposing documents.

■ As stated in *Theunissen,* although a motion for summary judgment and a Rule 12(b)(2) motion are similar in some respects, "[i]n sharp contrast to summary judgment procedure, ... the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." 935 F.2d at 1459 (citing *Serras,* 875 F.2d at 1214). Dismissal is warranted only if all of the facts the plaintiff asserts "collectively [fail] to state a prima facie case for jurisdiction ... ." *Id.* Therefore, we must determine whether, basing its decision solely on the pleadings and affidavits and ignoring contrary assertions by Copley and Union, the district court in the instant case properly granted Copley and Union's 12(b)(2) motion. *Serras,* 875 F.2d at 1215.

Even if we take MMR's allegations as true, a review of the record reveals that Copley's and Union's contacts with Ohio are insufficient to satisfy " 'the *sine qua non* of *in personam* jurisdiction.' " *Southern Machine,* 401 F.2d at 381–82. That is, MMR fails to make claims sufficient to show Copley's or Union's purpose-

ful availment of the privilege of acting in or causing consequences in Ohio.

MMR made the initial contact. Defendants were never present in Ohio to conduct business with MMR, and Defendants never intended to execute a contract in Ohio. Furthermore, MMR's complaint and Rhodes' affidavit reveal the tentativeness of Defendants' commitment to MMR's plan and the hesitation on the part of Union and Copley to enter an agreement. The only allegation of MMR that remotely suggests that Defendants wished to avail themselves of the benefit of MMR's services is stated in averment 11 of Rhodes' affidavit: "Mr. Wilson told me to proceed with development of the proposal for J.C. Penney and to include as options any other services I though [sic] might be beneficial to the UNION–TRIBUNE." Even here, however, the expressions MMR attributes to Union are couched in terms that indicate the speculative nature of the parties' dealings. Moreover, although Copley and Union, in fact, expressed some interest in financing MMR's demonstration project, economic feasibility for the newspapers and Penney's participation were conditions of the proposed agreement. Even though Defendants made telephone calls and sent mail to MMR in Ohio, the quality and nature of their contacts with Ohio fall short of the requirements of due process.

Contrary to MMR's assertions, there is no indication that, in drawing its conclusion, the district court "adopted" Copley and Union's version of the facts. MMR admits that it entered into an agreement with an advertising bureau, which contacted a large retailer, which, in turn, contacted Defendants for the purpose of securing their financial assistance. Defendants did not seek MMR's business, nor did they actively pursue an ongoing business relationship with MMR. It is clear that neither Copley's nor Union's activities rise to the level of "purposeful availment." MMR, therefore, has failed to carry the minimal burden of establishing a prima facie case of jurisdiction. Accordingly, we hold that the district court properly considered the written submissions and did not err in its deter-

mination that exertion of personal jurisdiction in this case would violate due process.

### III

■ Borrowing language from our opinion in *Serras*, MMR submits that when "disputed jurisdiction facts are intimately intertwined with the parties' dispute on the merits," 875 F.2d at 1215, the district court must defer until trial a ruling on a 12(b)(2) motion to dismiss. MMR contends that the jurisdictional facts in the instant case are not merely "initimately intertwined" but are identical, and, therefore, the district court erred by failing to reserve until after trial its determination of the 12(b)(2) motion.

MMR misreads the *Serras* opinion. Although in that case we held that the district court erred by granting a 12(b)(2) motion without obtaining additional evidence before or during trial, we based our decision on the finding that Serras' affidavit offered a "fully adequate allegation of jurisdictional facts." *Id.* MMR overlooks the fact that we noted in *Serras*, a case involving a Michigan district court's assertion of *in personam* jurisdiction, that "the plaintiffs rely not only on alleged telephone calls but also on an allegation that the defendant actually travelled to Michigan to solicit their business, and actually made fraudulent representations while in Michigan." *Id.* at 1217. These allegations alone were sufficient to support jurisdiction; therefore, a 12(b)(2) dismissal was improper absent controverting evidence that may have been presented later in the proceedings. *Serras* should not be read to require the district court to hold an evidentiary hearing when, as in the instant case, a plaintiff's pleadings and affidavits are insufficient to make a prima facie showing of facts supporting the court's assertion of *in personam* jurisdiction.

As we have repeatedly stated, most recently in *Theunissen:*

> Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of

deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions. The court has discretion to select the method it will follow, and will only be reversed for abuse of that discretion.

935 F.2d at 1458 (citing *Michigan Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir.1989); *Serras*, 875 F.2d at 1214). Nothing in the record indicates that the district court abused its discretion by failing to require depositions or to hold an evidentiary hearing prior to its grant of the motion to dismiss.

### IV

MMR's final contention is that the district court erred by failing to grant MMR's motion for reconsideration and leave to file an amended complaint. The granting of such a motion is within the discretion of the district court. *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.1987); *Bank of Montreal v. Olafsson*, 648 F.2d 1078, 1079 (6th Cir.), *cert. denied*, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981). It is our considered opinion, particularly in light of the above discussion, that the court did not abuse its discretion.

### V

For the foregoing reasons, we AFFIRM the district court's order dismissing the case for lack of *in personam* jurisdiction over Copley and Union, and we AFFIRM the denial of the motion for reconsideration and leave to file an amended complaint.