Joyce JAMES, Plaintiff,

v.

HRP, INC., and David A. Valerio, Defendants.

No. 4:93–CV–194.

United States District Court,
W.D. Michigan,
Southern Division.

April 12, 1994.

John Schlinker, Grand Rapids, MI, for plaintiff.

William Fette, Scott Graham, Kalamazoo, MI, for defendants.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This action arises out of plaintiff Joyce James' employment with the defendant corporation, HRP, Inc. Plaintiff was terminated on August 29, 1993. She initially filed suit against HRP and its president, David Valerio, on November 12, 1993, in Kalamazoo County Circuit Court. The action was removed to this Court by defendants on December 9, 1993. The parties are now before the Court on defendants' motions to dismiss and/or for summary judgment (# 6, 21), pursuant to Fed.R.Civ.P. 12 and 56.

## FACTS

HRP, Inc., is a Pennsylvania corporation which operates a facility in Kalamazoo, Michigan. HRP raises rabbits and dogs at the Kalamazoo facility for use in biomedical research. The rabbitry at the facility is a pathogen-free facility. A barrier exists between the rabbitry and outside areas in order to maintain sanitary conditions. Furthermore, HRP has promulgated a number of Standard Operating Procedures (SOPs), applicable to employees, to ensure the environment remains pathogen-free. The SOPs issued in 1990 state that "No personal items will be brought into the facility such as watches, food not in a can, clothing, etc. All clothing and personal needs will be supplied." The 1992 SOPs contain similar language: "No personal items will be brought into the facility, including watches, clothing, etc ... Clothing worn, including undergarments, shoes and scrub suits, will be specifically for use in the barrier." A further document issued by the company in 1992 specifies that:

No personal belongings, including shoes, socks, jeans, etc..., are to be taken into the rabbitry. You will need to purchase undergarments and shoes to be left and used inside each side of the rabbitry. The company will reimburse you for these items. Scrub suits are supplied by the company. A supervisor will supply all employees with a list of items required prior to starting work. It is advisable for employees to lock personal items in lockers outside of the barrier.

On February 27, 1990, plaintiff acknowledged by signature that she had reviewed the 1990 version of the Standard Operating Procedures.

Plaintiff maintains that throughout her employment with HRP, she complained about abuse of animals by a co-worker, Steven Stahr. According to plaintiff's affidavit, she specifically informed her immediate supervisor, Kathy Meisner, about Stahr's propensity to abuse animals in January, June, July, and August of 1993. Plaintiff also states that she informed Russell Robinson, HRP's Kalamazoo site manager, of the ongoing instances of abuse in July of 1993.

On August 29, 1993, plaintiff took a video camera into the rabbitry and videotaped the interior and the animals. Plaintiff maintains she did so to gather evidence of animal abuse at HRP. The video camera had been provided by an animal rights organization which plaintiff had contacted. Russell Robinson was immediately informed that plaintiff had a video camera in the rabbitry, and drove to the HRP facility to investigate. By the time he arrived, plaintiff was no longer videotaping in the rabbitry. Mr. Robinson found a video camera in the HRP break room that contained a video tape, which he assumed belonged to plaintiff. Mr. Robinson rewound the tape and watched it while waiting for

plaintiff. According to Mr. Robinson's affidavit, the tape depicted the inside of the rabbitry, cages, feeders, and a single dead rabbit. Plaintiff then arrived and informed Mr. Robinson that the video camera belonged to her. According to defendants, plaintiff at the time told Mr. Robinson merely that she made the videotape in order to demonstrate to her supervisor the problem she was having with the rabbitry feeding procedures. In her deposition, however, plaintiff testified that she also specifically told Mr. Robinson she was attempting to obtain proof of animal abuse. Mr. Robinson terminated plaintiff's employment with HRP at that time. According to his affidavit, he did so for "policy infractions."

Sometime in August, plaintiff and possibly other employees of HRP had contacted the media about animal abuse at HRP. On August 30, 1993, David Valerio, the president of HRP and a Pennsylvania resident, received a phone call at HRP headquarters from a reporter for the Detroit News, inquiring about the allegations. In response, defendant Valerio issued a memorandum dated August 31, 1993, to various media representatives which stated in part:

> I followed up with inquiries to my management group in Kalamazoo, Michigan. It is our belief that these charges are false and have been perpetrated by the recent dismissal of three employees who were terminated for failure to follow Standard Operating Procedures (SOP's) designed to assure the health and well-being of our animals. . . .
>
> We believe these former employees have contacted various media groups with the intent to compromise the reputation of a senior technician and our organization in retribution for termination of their employment.

The memorandum was on HRP letterhead, and all parties agree that defendant Valerio was acting in his capacity as president of HRP when he issued the memo.

Plaintiff's first amended complaint alleges four counts. In Count I, plaintiff maintains

that her discharge, along with the discharges of two other HRP employees, constitutes a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, by HRP. Count II alleges that HRP violated the Michigan Whistleblowers' Protection Act (WPA), M.C.L.A. § 15.361 *et seq.* In Counts III and IV, plaintiff contends that HRP and defendant are liable for libel.[1] The parties have stipulated to the dismissal of Count I. Accordingly, only the Whistleblower and libel claims remain. Defendants have moved to dismiss and/or for summary judgment on these claims (# 4, 6, 21). The parties concur that given plaintiff's amended complaint, only docket #'s 6 and 21 remain to be settled. Defendants have indicated they will withdraw docket # 4.

## DISCUSSION

Defendants make several arguments in support of their motions to dismiss and/or for summary judgment. First, defendant Valerio contends that the Court lacks personal jurisdiction over him. Second, as to Count II, HRP maintains that plaintiff has failed to state a claim under the Whistleblowers' Protection Act. Finally, both defendants HRP and Valerio argue that plaintiff's cause of action for libel set forth in Counts III and IV must fall, as plaintiff has failed to satisfy all the elements of libel. Defendant Valerio additionally contends that the libel claim against him must fail as he was only acting on behalf of HRP, and not in his own "personal interest."

Defendants contend they are entitled to dismissal pursuant to Fed.R.Civ.P. 12. Rule 12(b)(2) permits defendants to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Rule 12(c) specifies, however, that if:

> matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .

---

1. Defendants have also filed a counterclaim, alleging slander and tortious interference with a business relationship.

In this instance, extensive evidence outside the pleadings has been presented to the Court. Accordingly, where defendants have moved to dismiss or for summary judgment under Fed.R.Civ.P. 12(b)(6) and 56(c), the Court shall treat the motion as a motion for summary judgment.

■ Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Sims v. Memphis Processors, Inc.*, 926 F.2d 524, 526 (6th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

■ The moving party bears the burden of clearly and convincingly demonstrating the absence of any genuine issues of material facts. *Sims*, 926 F.2d at 526. The court must consider all pleadings, depositions, affidavits, and admissions on file and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the moving party carries this burden, the nonmoving party must present significant probative evidence showing that genuine, material factual disputes remain to defeat summary judgment. *Sims*, 926 F.2d at 526. The court's function is not to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial. *Id.* The court must make purely legal judgments that go to the nature and sufficiency of the complaint as well as the evidence put forward to support it. *Val–Land Farms, Inc. v. Third Nat'l Bank*, 937 F.2d 1110, 1113 (6th Cir.1991). Applying these principles to the present case, the Court concludes that defendants' motions to dismiss and/or for summary judgment shall be granted in part and denied in part.

## I. Personal Jurisdiction Over Defendant Valerio

Defendant Valerio first maintains in his separate motion to dismiss that this Court lacks personal jurisdiction over him. Defendant is a resident of Pennsylvania. According to defendant, plaintiff has failed to set forth in her complaint how Valerio is connected to the state of Michigan, and thus dismissal of the libel claim against him is warranted under Fed.R.Civ.P. 12(b)(2).

■ Personal jurisdiction vests in federal district court if two conditions are met. First, personal jurisdiction must arise under forum state law. In the present case, Michigan law determines whether jurisdiction is present. Under M.C.L.A. § 600.705, limited personal jurisdiction arises if an individual, among other things, transacts business in the state or does or causes an act to be done, or consequences to occur, in the state, which results in an action in tort.

■ Second, personal jurisdiction must satisfy constitutional requirements of due process. Essentially, personal jurisdiction must accord with notions of "fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see Market/Media Research v. Union–Tribune Publishing Co.*, 951 F.2d 102, 104 (6th Cir.1991), *cert. denied*, — U.S. —, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992).

■ When personal jurisdiction is challenged, the plaintiff bears the burden of demonstrating that jurisdiction is proper. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). The Sixth Circuit has developed three procedural schemes district

courts may follow when deciding questions of personal jurisdiction pursuant to a Rule 12 motion. According to the Appellate Court:

[The district court] may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.

*Theunissen,* 935 F.2d at 1458; *see Serras v. First Tennessee Bank Nat'l Assn.,* 875 F.2d 1212, 1214 (6th Cir.1989). "The court has discretion to select which method it will follow, and will only be reversed for abuse of that discretion." *Theunissen,* 935 F.2d at 1458.

 Under the first procedure, which allows this court to decide the motion on the pleadings and affidavits alone, the plaintiff need only make a prima facie showing of jurisdiction to satisfy her burden. *Market/Media Research,* 951 F.2d at 104. Pleadings and affidavits are read in the light most favorable to the plaintiff. Under this standard, "[d]ismissal is warranted only if all the facts plaintiff asserts 'collectively [fail] to state a prima facie case for jurisdiction.'" *Id.* at 105 (quoting *Theunissen,* 935 F.2d at 1459). Using this procedure, plaintiff has established that this Court has personal jurisdiction over the defendant. Although it is unclear whether defendant Valerio ever transacted business in the state of Michigan, his actions did yield consequences in the state which resulted in this action in tort. Where such consequences were the clearly foreseeable and conceivable result of the publication of the defamatory statement, sufficient minimum contacts exist to assert personal jurisdiction. *Cole v. Doe,* 77 Mich.App. 138, 143, 258 N.W.2d 165 (1977). In *Cole,* the defendant, a California resident, made statements which allegedly defamed plaintiff to a syndicated columnist during an interview in California. The columnist then returned to Michigan and wrote two allegedly libelous articles based on the interview. The Michigan Court of Appeals found the requisite minimum contacts to give rise to personal jurisdiction. In this case, where defendant Valerio directly transmitted the allegedly defamatory statements to news organizations in Michigan, personal jurisdiction is clearly proper, and accords with notions of "fair play and substantial justice."

## II. Whistleblower Claim

Defendant HRP contends in its motion to dismiss or for summary judgment that plaintiff has failed to establish a claim of retaliatory discharge under the Whistleblowers' Protection Act. The Michigan courts have repeatedly noted that the Act was enacted to "protect the integrity of the law by removing barriers to employee efforts to report violations of the law." *Chilingirian v. Fraser,* 194 Mich.App. 65, 68, 486 N.W.2d 347 (1992); *Hopkins v. City of Midland,* 158 Mich.App. 361, 374, 404 N.W.2d 744 (1987) (quoting *Melchi v. Burns Int'l Security Serv., Inc.,* 597 F.Supp. 575, 581 (E.D.Mich.1984)). Under the WPA:

An employer shall not discharge, threaten, or otherwise discriminate against an employee ... because the employee ... reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body....

M.C.L.A. § 15.362. The Act authorizes civil actions for damages or injunctive relief. M.C.L.A. § 15.363(1); *Tyrna v. Adamo, Inc.,* 159 Mich.App. 592, 600, 407 N.W.2d 47 (1987) (citing *Hopkins,* 158 Mich.App. at 374, 404 N.W.2d 744). To recover, an employee must show by clear and convincing evidence that he or she was about to report a violation or suspected violation of applicable law. M.C.L.A. § 15.363(4).

 The cases interpreting the WPA have drawn heavily from the framework set forth for employment discrimination actions under state and federal law. *See Wolcott v. Champion Int'l Corp.,* 691 F.Supp. 1052, 1058 (W.D.Mich.1987). Accordingly, to establish a *prima facie* case of retaliation under the Act, a plaintiff must demonstrate three elements:

(1) That the plaintiff engaged in protected activity as defined by the Act;

(2) That the plaintiff was subsequently discharged from employment; and

(3) That there is a causal connection between the protected activity and the discharge.

*Id.* (quoting *Melchi,* 597 F.Supp. at 582); *see also Tyrna,* 159 Mich.App. at 601, 407 N.W.2d 47; *Hopkins,* 158 Mich.App. at 378, 404 N.W.2d 744. For purposes of this motion only, defendant HRP concedes that the first two elements have been established. HRP maintains, however, that plaintiff has failed to demonstrate the third requirement. Defendant insists that there is no causal connection between plaintiff's actions of documenting and reporting allegations of animal abuse and her subsequent discharge.

■ HRP contends that plaintiff was fired solely because she violated the Standard Operating Procedures in the rabbitry by bringing a personal item—a video camera—into the facility. According to Mr. Robinson, the facility manager who terminated plaintiff, plaintiff informed him only that she had taken the video camera into the room to document for her supervisor the difficulty she was having with the feeding procedures. Mr. Robinson then discharged plaintiff for "policy infractions." Defendant claims there are no facts which suggest that Mr. Robinson terminated plaintiff because she was attempting to document animal abuse.

Despite defendant's contention, however, there are ample facts from which a jury could find a causal relationship between plaintiff's efforts to document animal abuse and her subsequent discharge. According to plaintiff's affidavit, she informed Mr. Robinson in July of 1993 of her concerns about the ongoing abuse by her co-worker Stahr. Mr. Robinson's own affidavit indicates that he viewed the videotape prior to terminating plaintiff, and observed that she had filmed a dead rabbit. Finally, plaintiff testified at her deposition that she informed Mr. Robinson when he confronted her about taking the camera into the rabbitry not only that she was attempting to document her difficulties with feeding procedures, but that she was also gathering evidence of animal abuse. The Court finds that there is a genuine issue of material fact whether plaintiff has established a *prima facie* case of retaliatory discharge.

■ Once plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate non-retaliatory reason for the termination. *Wolcott,* 691 F.Supp. at 1058. Here, defendant has stated that plaintiff was fired for violating the SOPs which prohibit the taking of personal items into the rabbitry. Her actions do appear to have violated the dictates of the SOPs. Despite plaintiff's contention, a video camera clearly qualifies as the sort of personal item prohibited by the SOPs.

■ Accordingly, to survive HRP's motion for summary judgment, plaintiff must present evidence which creates a triable issue of fact as to whether the defendant's proffered reason for the discharge was pretextual. *Id.; see also Eckstein v. Kuhn,* 160 Mich.App. 240, 247, 408 N.W.2d 131 (1987). Plaintiff testified at her deposition that HRP did not apply the SOPs to preclude the taking of cameras into the rabbitry; in fact, plaintiff stated that she knew of several individuals who had brought video cameras into the rabbitry prior to August of 1993 without censure. In light of this evidence, the Court cannot conclude that plaintiff has failed to state a claim under the Whistleblowers' Protection Act as a matter of law. There is sufficient evidence from which a jury could infer that plaintiff was terminated because she was attempting to document animal abuse at the HRP's Kalamazoo facility, and that HRP's stated reason for the discharge was mere pretext.

### III. Libel Claims

Defendants HRP and Valerio finally argue that plaintiff has failed to establish a libel claim under Michigan law. To establish a defamation claim in Michigan, the Sixth Circuit has held that a plaintiff must demonstrate four elements. Those elements are:

(1) that the defendant published a false and defamatory statement concerning the plaintiff; (2) that the statement was an unprivileged communication to a third person; (3) that the defendant was at least negligent in making the statement; and (4) that the statement caused damage to the plaintiff.

*Falls v. Sporting News Publishing Co.,* 834 F.2d 611, 614–15 (6th Cir.1987) (citing *Ledl v. Quik Pik Food Stores, Inc.,* 133 Mich.App. 583, 589, 349 N.W.2d 529 (1984)). Defendants advance three arguments in support of their contention that plaintiff has failed to establish a cause of action for libel. First, defendants contend that the first element is not met, as the memorandum issued by defendant Valerio, upon which plaintiff's libel claim is premised, does not mention plaintiff by name. Second, defendants maintain that the memorandum constituted a privileged communication, and thus that the second requirement for defamation has not been established. Finally, defendant Valerio argues that he is not personally liable for libel under Count IV, as he was not acting in his personal interest when he issued the memorandum.

■ Defendants first contend that because the memorandum to the news media did not mention plaintiff by name, it did not constitute defamation. The defendants cite no authority in support of this proposition. The Court notes that since the memo was issued in response to inquiries from a newspaper reporter, the context in which it arose suggests that the identities of the persons referred to in the memorandum were apparent to all involved. Ultimately, it is a question of fact for the jury whether the memorandum identified plaintiff with sufficient certainty to constitute defamation.

Defendants next maintain that the memorandum is privileged as it was a "reasonable response in the normal course of business" to an inquiry by a member of the press, and thus cannot form the basis for a libel claim. Again, defendants cite no authority for this claim.

Finally, defendant Valerio contends that he may not be held personally liable for defamation under Count IV, as he was acting as president of HRP when he issued the memorandum to the news media, and thus was not acting in his personal interest. In support of this contention, defendant cites *Covell v. Spengler,* 141 Mich.App. 76, 366 N.W.2d 76 (1985). In *Covell,* a Michigan Court of Appeals ruled that the plaintiff had failed to establish that the individual corporate officials were personally liable for plaintiff's ter-

mination. The court held that the complaint was one "against the corporation, not against corporate officials acting in their own personal interest." *Id.* at 85, 366 N.W.2d 76. From this language, defendant Valerio gleans the principle that unless defendant was acting in his own personal interest when he issued the allegedly defamatory memorandum, he cannot be held accountable for libel.

■ In Michigan, a corporation may be held liable for defamation by an agent while the agent is in the discharge of his or her duty as an agent. *Jones v. Sears, Roebuck & Co.,* 459 F.2d 584, 587 (6th Cir.1972) (quoting *Poledna v. Bendix Aviation Corp.,* 360 Mich. 129, 139–40, 103 N.W.2d 789 (1960)). Accordingly, HRP can be held liable for libel published by defendant Valerio in the course of his duties as president of HRP. The converse of this principle, at issue in this case, is whether Valerio may be held *personally* liable for defamation when he issued the libelous statement solely on behalf of the corporation as part of his duties as corporation president. On this point, the reasoning in *Covell* proves instructive. In *Covell,* the Michigan appellate court found that although the individual defendants, officers of the defendant corporation, were the persons who actually made the decision to terminate plaintiff, because they did so on behalf of the corporation, plaintiff could not assert a cause of action for retaliatory discharge against them individually. *Covell,* 141 Mich.App. at 85, 366 N.W.2d 76.

In this case, plaintiff's complaint is also essentially against the corporation, not the individual defendant. Defendant Valerio was clearly acting as an officer of HRP when he issued the allegedly defamatory memorandum. The memo was printed on HRP letterhead, and was issued in response to a telephone call to HRP headquarters in Pennsylvania. Defendant Valerio simply happened to be the HRP official who responded to the inquiry. Plaintiff has cited no authority which indicates that personal liability attaches in such a case. Given these circumstances, plaintiff may not bring an action of libel against defendant Valerio as an individual.

The Court thus finds that plaintiff has no valid claim for libel against defendant Valerio. Accordingly, summary judgment for defendant shall issue as to this claim. With respect to the libel claim against HRP, however, there remains a genuine issue of material fact whether HRP defamed plaintiff in violation of Michigan common law.

## CONCLUSION

For the foregoing reasons, the Court finds that defendant Valerio's motion to dismiss for lack of personal jurisdiction (# 6) shall be denied. Defendants HRP and Valerio's motion to dismiss or for summary judgment (# 21) shall be granted in part and denied in part. The motion shall be granted with respect to Count IV of the first amended complaint, which sets forth a claim for libel against defendant Valerio personally. The motion shall be denied with respect to Counts II and III.