MOELLERS NORTH AMERICA, INC., a Delaware corporation, Plaintiff,

v.

MSK COVERTECH, INC., a Georgia corporation, MSK Verpackungs–Systeme GmbH, a German limited liability company, Guido A. Oswald, a citizen of Georgia, and Reiner W. Hannen, a citizen of Germany, Defendants.

No. 1:93–CV–894.

United States District Court, W.D. Michigan, Southern Division.

Nov. 14, 1995.

Daniel Van Dyke, Van Dyke, Gardner, Linn & Burkhart, L.L.P., Grand Rapids, MI, for Moellers North America, Inc.

Timothy A. Newman, Brooks & Kushman, Southfield, MI, for MSK Covertech, Inc., MSK Verpackungs–Systeme GmbH, Guido A. Oswald, and Reiner W. Hannen.

## OPINION

QUIST, District Judge.

This is a civil action wherein the plaintiff Moellers North America, Inc. ("Moellers") alleges that defendants are liable for trade libel, tortious interference with contract, tortious interference with prospective economic advantage, negligence, unfair competition, and violations of the Lanham Act. Defendants counterclaimed that plaintiff has infringed on three patents held by defendant

MSK Verpackungs–Systeme GmbH ("MSK–Germany"). The Court is exercising its jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332. There are presently four motions before the Court:

1) Defendants Hannen and Oswald's Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c);

2) Defendant MSK's [1] Motion for Summary Judgment on Counts III–VII of Plaintiff's Amended Complaint;

3) Defendant MSK's Motion for Default Judgment as to liability concerning three patents; and

4) Plaintiff's Motion to Vacate the Default Judgment entered by the Clerk of the Court on September 8, 1995.

### Facts

*Parties*

Plaintiff Moellers is a Delaware corporation with its principal place of business in Grand Rapids, Michigan. Defendant MSK–Germany is a German limited liability company with its principal place of business in Germany. MSK–Germany's wholly owned subsidiary, MSK–Covertech, Inc., is a Georgia corporation with its principal place of business in Kennesaw, Georgia. Defendant Reiner Hannen is a German citizen. Defendant Guido Oswald is a Swiss citizen who resides in Georgia.

*Events*

In April 1993, both MSK–Covertech and Moellers were bidding to supply an automatic plastic shrink wrap machinery system to Vetrotex CertainTeed Corporation ("CertainTeed") in Texas. Upon learning that Moellers was also a bidder, Oswald sent a letter dated April 22, 1993, on behalf of MSK–Covertech to CertainTeed advising that Moellers was infringing on MSK's patent for the burner design and that MSK had taken the Undershrink license away from Moellers. Defendant Hannen, as Chairman of the Board and President of MSK–Germany, sent a letter dated June 30, 1993, to CertainTeed

---

**1.** "MSK" refers to MSK–Germany and MSK–Covertech, Inc. jointly. The party filing the mo-

tions simply referred to itself as "MSK."

stating that the heating system and Undershrink were patented and that CertainTeed could be held responsible for patent violations. On July 1, 1993, CertainTeed sent Moellers a purchase order for a shrink wrap system. Oswald sent CertainTeed a letter by fax regarding patent infringement on July 3, 1993, that referenced a telephone conference on the infringement issue. On July 12, 1993, CertainTeed sent Moellers a letter confirming cancellation of the purchase order by telephone that day.

## Discussion

### A. Individual Defendants' Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides in part that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Contrary to plaintiff's suggestion, defendants did not need the permission of the Court to file this motion. Defendants are explicitly given the right to do so by the Federal Rules of Civil Procedure.

Applying Michigan law, the Sixth Circuit has held that "[i]t is well established that a corporate officer or agent is personally liable for torts committed by him *even though he was acting for the benefit of the corporation.*" *In re Interstate Agency*, 760 F.2d 121, 125 (6th Cir.1985) (citing, *inter alia*, *Allen v. Morris Building Co.*, 360 Mich. 214, 218, 103 N.W.2d 491 (1960); Restatement (Second) of Agency § 343 (1957)); *Lifeline Ltd. No. II v. Connecticut Gen. Life Ins.*, 821 F.Supp. 1201, 1213 (E.D.Mich.1993), *modified in part by*, 821 F.Supp. 1213 (E.D.Mich.1993).

■ There is an exception to this rule. When an officer interferes with a contract between his own employer and a third party

for the benefit of his corporation, he may not be found liable for tortious interference of contract or business expectancy. *Lifeline (first decision)*, 821 F.Supp. at 1213;[2] *see Reed v. Girl Scout Council*, 201 Mich.App. 10, 13, 506 N.W.2d 231 (1993) (citing *Bradley v. Philip Morris, Inc.*, 194 Mich.App. 44, 50–51, 486 N.W.2d 48 (1992)). This shield from liability does *not* apply where the officer's corporation is *not* a party to the contract. *Lifeline*, 821 F.Supp. at 1213 (distinguishes *Bradley* in upholding tortious interference of business expectancy claim where the officer's interference was with independent third parties).[3] In the instant case, plaintiff claims that the individual defendants interfered with plaintiff's relations with CertainTeed Corporation, an independent third party. Thus, plaintiff's tortious interference claims against the individual defendants should not be dismissed on the pleadings. The defendants are free to raise the issue once again in their trial brief or in a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

With respect to plaintiff's libel claims, plaintiff cites to a recent decision in this district. A district court in the Western District of Michigan has recently held that an officer acting for the benefit of the corporation rather than for his own benefit could not be held personally liable for libel. *James v. HRP, Inc.*, 852 F.Supp. 620, 627 (W.D.Mich. 1994) (citing *Covell v. Spengler*, 141 Mich. App. 76, 366 N.W.2d 76 (1985)).

■ The *James* court thought it significant that "[p]laintiff has cited no authority which indicates that personal liability attaches in such a case." *James*, 852 F.Supp. at 627. *James* did not note Michigan's rule that one's status as a corporate officer ordinarily does not serve as a shield to liability even when one acts for the good of the

---

**2.** The case modifying the original *Lifeline* decision dismissed the tortious interference of business expectancy claim but left the reasoning cited above intact. *See Lifeline* (second decision), 821 F.Supp. at 1213. Judge Feikens dismissed the claim because the plaintiff failed to allege facts which satisfied the third prong of Michigan's tortious interference with business relations test, that there was "an intentional interference inducing or causing a breach of termination of a relationship or expectancy." *Id.* at 1216

(citing *Pryor v. Sloan Valve Co.*, 194 Mich.App. 556, 560, 487 N.W.2d 846 (1992)).

**3.** This shield from liability also does not apply where the corporate employee is acting for his own benefit against the benefit of his corporate employer. *Stack v. Marcum*, 147 Mich.App. 756, 759–60, 382 N.W.2d 743 (1985) (citing *Seven D Enters. Ltd. v. Fonzi*, 438 F.Supp. 161, 163–64 (E.D.Mich.1977)).

corporation. *In re Interstate Agency,* 760 F.2d at 125; *Allen,* 360 Mich. at 218, 103 N.W.2d 491. *James* primarily relied upon *Covell v. Spengler,* a retaliatory discharge case involving a contract to which the corporate officer's employer was a party. As such, *Covell* falls within the exception to Michigan's rule regarding contracts to which one's employer is a party. *See Lifeline (first decision),* 821 F.Supp. at 1213. *Covell* should not be read to stand for the general proposition that corporate officers can never be held liable for torts committed on behalf of their corporate employers.

■ Furthermore, under Michigan law, the act of signing a libelous letter is enough to subject one to liability because everyone "actively connected with and engaged in the publication of a libel are responsible for the results." *Bowerman v. Detroit Free Press,* 279 Mich. 480, 491, 272 N.W. 876 (1937); *German v. Killeen,* 495 F.Supp. 822, 832 (E.D.Mich.1980). Thus, in theory, plaintiff may recover from the individual defendants for defendants' allegedly libelous acts.

## B. Defendant MSK's Motion for Summary Judgment on Counts III–VII of Plaintiff's Amended Complaint

Defendant MSK argues that plaintiff has brought forth no evidence showing that any of the letters written by defendants to CertainTeed had a causative effect on CertainTeed's decision to cancel its contract with plaintiff. Because causation is an essential element of each of Counts III–VII, MSK argues that summary judgment is appropriate on each of these counts.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574,

587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

■ Because the defendants have produced no new factual evidence which would influence the Court's decision, the Court reaches the same conclusion on MSK's argument that it reached in its Memorandum Opinion of December 28, 1994 (docket no. 56). To restate the Court's prior conclusion, the timing of CertainTeed, Inc.'s cancellation of its purchase order with plaintiff and the concern expressed by CertainTeed regarding the legal battle between plaintiff and defendants demonstrate that there is a genuine and material issue as to why CertainTeed canceled its purchase order and ceased doing business with plaintiff. Therefore, defendants' motion for summary judgment on Counts III–VII of plaintiff's amended complaint will be denied.

## C. Defendant MSK's Motion for Default Judgment as to Liability Regarding Three Patents and Plaintiff's Motion to Vacate the Default Judgment entered by the Clerk of the Court

Counts I and II of defendants' Counterclaim filed May 22, 1995, (docket no. 89) are identical in substance to Counts I and II of defendants' counterclaims filed December 29, 1994 (docket no. 58). Plaintiff answered these claims in the Answer to Defendants' Crossclaim filed with the Court on January 17, 1995 (docket no. 59). There is no need for plaintiff to refile its answer. The default entered by the Clerk of the Court on September 8, 1995 (docket no. 96) was therefore in error. The default entered in regards to Counts I and II will be vacated pursuant to Rules 55(b)(2) and 60(b) of the Federal Rules of Civil Procedure.

■ In his Order of May 4, 1995 (docket no. 87), Magistrate Judge Rowland required defendants to "respond" to plaintiff's amended complaint on or before May 22, 1995. Defendants responded by mailing a copy of their answer to the amended complaint on May 22, 1995 (filed May 25, 1995) to the parties and the Court. Defendants' pleading included three counterclaims involving patents. Rule 15(a) of the Federal Rules of Civil Procedure allows a party to plead in

response to an amended complaint in accordance with the deadlines imposed by the Court and Rule 13 refers to both compulsory and permissive counterclaims as pleadings. *See, e.g., Salomon S.A. v. Alpina Sports Corp.,* 737 F.Supp. 720, 722 (D.N.H.1990) (allowed revised counterclaims after an amended complaint was filed); *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.,* 50 F.R.D. 415, 419 (D.Del.1970) (same). Thus, the defendants' counterclaims were authorized by the Federal Rules of Civil Procedure.

The Court will not reach the issue of whether or not Count III is a compulsory counterclaim. *See Sanders v. First Nat. Bank & Trust Co.,* 936 F.2d 273 (6th Cir. 1991) (detailing methods for determining whether counterclaim is permissive or compulsory). The Court will allow the counterclaim as a permissive counterclaim pursuant to Rule 13(b) of the Federal Rules of Civil Procedure. Rule 13(b) provides that "[a] pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Rule 13(b) is intended to dispense with needless independent causes of action when such issues can be resolved as permissive counterclaims. *2001, Inc. v. Novaglas Corp.,* 60 F.R.D. 649, 650 (E.D.N.Y.1973); *American Car & Foundry Inv. Corp. v. Chandler–Groves Co.,* 2 F.R.D. 85, 87 (E.D.Mich.1941). Given the parties' history of patent litigation, the threat of a future independent cause of action based on the "anti-collage patent" at issue in Count III is substantial.

Rule 12(a)(2) of the Federal Rules of Civil Procedure obligated plaintiff to reply to the counterclaims within 20 days of service. However, since no answer to Count III has been filed to date, plaintiff must file an answer to Count III of defendants' counterclaims (docket no. 89) within fourteen (14) days following entry of the Order which accompanies this Opinion or the Court will enter a default judgment in favor of the defendants.

## ORDER

In accordance with the Opinion issued on this date,

**IT IS HEREBY ORDERED** that defendants Hannen and Oswald's Motion for Judgment on the Pleadings (docket no. 99) and defendant MSK's Motion for Summary Judgment on Counts III–VII (docket no. 98) are **DENIED.**

**IT IS FURTHER ORDERED** that the default judgment entered by the Clerk of the Court on September 8, 1995 (docket no. 96) in favor of defendants on Counts I–III of defendants' Counterclaim (docket no. 89) is **VACATED.** Plaintiff must file an Answer within fourteen (14) days following entry of this Order. Plaintiff shall file the Answer with the Clerk of this Court and serve a copy on all attorneys of record. Failure to file an Answer within fourteen (14) days will result in the Court entering a default judgment in favor of defendants with respect to Count III of defendants' Counterclaim (docket no. 89).