IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 12, 2005 Session

## LUCITE INTERNATIONAL, INC. v. PETER RUNCIMAN, PH.D.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-1997-2    The Honorable Arnold Goldin, Chancellor**

---

**No. W2004-00314-COA-R3-CV - Filed February 18, 2005**

---

This case arises from the trial court's grant of Appellee's Tenn. R. Civ. P. 12.02 Motion to

Dismiss for lack of personal jurisdiction. Under the Tennessee long-arm statute and the relevant case

law, we find that the criteria for personal jurisdiction over Appellant are met. Consequently, we

reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and
Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER,
J. and HOLLY M. KIRBY, J., joined.

Jeff Weintraub and Robbin Hutton of Memphis for Appellant, Lucite International, Inc.

James L. Holt, Jr. for Appellee, Peter Runciman, Ph.D.

**OPINION**

On or about August 12, 1985, Peter Runciman ("Appellee") entered into an employment
agreement with Imperial Chemical Industries, Ltd. ("ICI") in the United Kingdom. The employment
agreement contained confidentiality and non-use provisions, with no restrictions as to duration. The
employment agreement contained no successors or assigns clause. Mr. Runciman remained with ICI
for the next ten years. In 1996, Mr. Runciman transferred from the United Kingdom to work in the
United States Division of ICI, known as ICI Americas, Inc., which is located and incorporated in

Deleware.[1] In connection with this transfer, Mr. Runciman signed a second employment agreement with ICI Americas, Inc. on August 12, 1996. This second agreement contained confidentiality and non-use provisions, effective during and for the five (5) years beyond cessation of employment. There was no successors or assigns provision in this second agreement. In 1998, Mr. Runciman transferred to the Tennessee offices of Lucite International, Inc. ("Lucite," or "Appellant").[2] Following the sale of ICI to Ineos, *see* fn 2, Mr. Runciman did not enter into any further contracts.

After his transfer to Lucite, Mr. Runciman resided at 8930 Enton Cove, Germantown, Tennessee. Lucite is a Missouri Corporation that is authorized and doing business in the State of Tennessee with its principal headquarters located at 7275 Goodlett Farms Parkway, Cordova, Shelby County, Tennessee.

According to Lucite, Mr. Runciman breached his employment agreement in September 2003.[3] The breach allegedly occurred when Mr. Runciman attempted to take approximately 300,000 confidential and proprietary documents belonging to Lucite and also when Mr. Runciman twice tried to take Lucite property in a red reference book containing confidential company information. Upon learning of Mr. Runciman's resignation of employment on September 10, 2003 and his acceptance of employment with a direct competitor, Dianal America, Inc., Lucite asserts that it twice informed Mr. Runciman (verbally and in writing) that Lucite might seek legal action against him due to the confidentiality provisions of his employment agreements and his alleged breaches of the agreements.

On October 10, 2003, Mr. Runciman finalized the sale of his residence in Tennessee and moved to Texas. On October 17, 2003, Lucite filed its "First Sworn Complaint for Injunctive and Other Relief" against Mr. Runciman in the Chancery Court of Shelby County. On October 21, 2003, Mr. Runciman was served with process at Dianal America, Inc. at its principal office in Pasadena, Texas.

On October 27, 2003, Mr. Runciman filed a "Motion to Dismiss Complaint" based upon lack of personal jurisdiction pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure. On the same day, Lucite filed a "Memorandum in Support of Jurisdiction," along with five affidavits to support the allegation of the Complaint, including jurisdiction. On November 17, 2003, an Amended Motion to Dismiss was filed, raising the issues of personal jurisdiction, improper venue pursuant to T.C.A. § 16-11-114(3), and failure to state a claim upon which relief can be granted. On or about December 8, 2003 Lucite responded with a "Memorandum in Opposition to Defendant's Motion to Dismiss." In the interim, Lucite filed additional affidavits in support of the allegations in the Complaint. On December 18, 2003, Mr. Runciman filed a Response to Lucite's Memorandum,

---

[1] ICI Americas, Inc. is a division of ICI Limited. ICI Americas, Inc. owned ICI Acrylics, Inc.

[2] In 1999, ICI Americas, Inc. sold the stock of ICI Acrylics, Inc. and its name was changed to Ineos Acrylics, Inc. The corporation's name was again changed in 2002 to Lucite International, Inc.

[3] Mr. Runciman challenged the validity of the employment agreements as to Lucite.

which the trial court declined to consider in making its final determination. Prior to the hearing on Mr. Runciman's Amended Motion to Dismiss, the trial court entered two Temporary Injunction Orders.

A hearing on the Amended Motion to Dismiss was held on December 18, 2003. On January 7, 2004, the trial court entered an "Order Granting Defendant's Motion to Dismiss for Lack of Personal Jurisdiction."

Lucite appeals and raises one issue for review as stated in its brief: "Whether the trial court erred in granting Appellee Runciman's Motion to Dismiss pursuant to Tenn. R. Civ. P. 12.02, based upon lack of personal jurisdiction."

The plaintiff has the burden of establishing a *prima facie* case that personal jurisdiction over a defendant is proper. *See Manufacturers Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 854 (Tenn. Ct. App. 2000). When a defendant files a motion to dismiss challenging the trial court's personal jurisdiction over him or her, the plaintiff must set out specific facts that demonstrate that the court has jurisdiction. *See id.* at 854-55. In *Rodell*, this Court noted:

> In ruling on the defendant's motion to dismiss for lack of personal jurisdiction, however, the trial court is required to construe the pleadings and affidavits in the light most favorable to the plaintiff. *Chase Cavett Servs., Inc. v. Brandon Apparel Group, Inc.*, No. 02A01-9803-CH-00055, 1998 WL 846708, at *1 (Tenn. Ct. App. Dec.7, 1998) (no perm. app. filed); *accord CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996); *Market/Media Research, Inc. v. Union-Tribune Publ'g Co.*, 951 F.2d 102, 104 (6th Cir.1991), cert. denied, 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992); *Theunissen v. Matthews*, 935 F.2d 1454, 1458, 1459 (6th Cir.1991); *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989). Under this standard, dismissal is proper only if all of the specific facts alleged by the plaintiff collectively fail to state a prima facie case for jurisdiction. *CompuServe*, 89 F.3d at 1262; *Market/Media Research* 951 F.2d at 105; *Theunissen*, 935 F.2d at 1459.

*Id*. at 855.

In *Chenault v. Walker*, 36 S.W.3d 45 (Tenn.2001), our Supreme Court provides guidelines for consideration of a motion to dismiss for lack of personal jurisdiction:

> Under the Tennessee Rules of Civil Procedure a motion to dismiss may be based on one or more of eight grounds, including lack of personal jurisdiction and failure to state a claim on which relief can

be granted. *See* Tenn. R. Civ. P. 12.02. A court either decides this motion based on the allegations contained in the pleadings or, if matters outside the pleadings--such as affidavits--are presented, the court will treat the motion as one for summary judgment as provided in Tenn. R. Civ. P. 56. *See* Tenn. R. Civ. P. 12.03.

As we have stated in the past, however, Rule 12.03 does not apply to a motion to dismiss for lack of personal jurisdiction, unless the evidence brought to the court is so conclusive that the motion may be fully and finally resolved on the merits. *See Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 561 n. 1 (Tenn.1981) ("[S]ummary judgment procedure does not properly apply to jurisdictional issues.") (quoting 6 Moore, Federal Practice (Part 2) § 56.17(36) at 913 (1980)). Often a complete resolution of the jurisdictional issue is not possible at the beginning of litigation because not enough evidence has been developed; indeed, discovery will not have yet begun. This gives rise to a dilemma. If a court seeks to develop more evidence, by ordering discovery or an evidentiary hearing, the burden on an out-of-state defendant may in some cases be nearly as great as if the court simply ruled from the start that jurisdiction was present and allowed the litigation to proceed. But allowing a court to decide whether jurisdiction exists based entirely on the pleadings, as a court may do when confronted with one of the other grounds to dismiss listed in Rule 12.02, is hardly a better solution.

* * *

Regardless of the theory on which personal jurisdiction is based, though, the necessity of adopting a middle-ground solution--between relying merely on the pleadings and postponing a decision on jurisdiction until discovery has been completed--is apparent.... It is clear that the plaintiff bears the ultimate burden of demonstrating that jurisdiction exists. *See McNutt v. General Motors Acceptance Corp*., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1141 (1936); *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998). If the defendant challenges jurisdiction by filing affidavits, the plaintiff must establish a prima facie showing of jurisdiction by responding with its own affidavits and, if useful, other written evidence. *See Posner v. Essex Ins. Co. Ltd.*, 178 F.3d 1209, 1214 (11th Cir.1999); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2nd Cir.1999); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998). A court will take as true the allegations of the

nonmoving party and resolve all factual disputes in its favor, *see Posner*, 178 F.3d at 1215; *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3rd Cir.1998), but it should not credit conclusory allegations or draw farfetched inferences, *see Massachusetts School of Law*, 142 F.3d at 34.

We find that this procedure for evaluating a defendant's motion to dismiss under Tenn. R. Civ. P. 12.02(2) is sensible and not inconsistent with any rule or case in Tennessee of which we are aware, and we therefore adopt it.

*Id*. at 55-56.

Tennessee's long-arm statute, T.C.A. § 20-2-214 (1994), allows Tennessee courts to exercise jurisdiction to the extent the Fourteenth Amendment of the United States Constitution permits. *See, e.g., Cummins v. Contract-Mart, Inc*., 635 F. Supp. 122, 124 (E.D.Tenn.1986); *Rodell*, 42 S.W.3d at 855. T.C.A. § 20-2-214 (1994) provides:

> **20-2-214. Jurisdiction of persons unavailable to personal service in state-- Classes of actions to which applicable.--**
> (a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
> (1) The transaction of any business within the state;
> (2) Any tortious act or omission within this state;
> (3) The ownership or possession of any interest in property located within this state;
> (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;
> (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
> (6) Any basis not inconsistent with the constitution of this state or of the United States;
> (7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

(b) "Person," as used herein, includes corporations and all other entities which would be subject to service of process if present in this state.

(c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative.

The Long-Arm Statute has been construed to reach as far as permitted by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. T.C.A § 20-2-214(a)(6); *see J.I. Case Corporation v. Williams*, 832 S.W.2d 530, 531-32 (Tenn.1992) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Our task, therefore, is to determine whether the exercise of personal jurisdiction over Mr. Runciman violates the Due Process Clause.

For a court to exercise general *in personam* jurisdiction over a nonresident defendant without violating the requirements of the Due Process Clause, the proof must show that the defendant maintains "continuous and systematic" contacts with the foreign state, and those contacts "give rise to the liabilities sued on." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, in the absence of general jurisdiction resulting from continuous and systematic contacts with the forum state, specific *in personam* jurisdiction still may be found when a commercial actor purposely directs his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 2182 (1985).

Since the United States Supreme Court adopted the "minimum contacts" analysis in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and in keeping with this State's long-arm statute, the Tennessee Supreme Court, in *Masada Investment Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn.1985) outlined a three-prong test to determine whether personal jurisdiction lies, to wit: (1) the defendant must purposefully avail himself or herself of the privilege of acting in or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the defendant's acts or consequences must have a substantial connection with the forum to make the exercise of jurisdiction reasonable. *Masada*, 697 S.W.2d at 334. The end result of the *Masada* analysis is a determination of whether, through its conduct and connection to the forum state, a defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958):

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality

and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.*

The United States Supreme Court, in ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 105 S. Ct. 2174 (1985), points out the following concerning the "purposeful availment" requirement:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, ***Keeton v. Hustler Magazine, Inc.***, 465 U.S., at 774, 104 S.Ct., at 1478; ***World-Wide Volkswagen Corp. v. Woodson***, *supra*, 444 U.S., at 299, 100 S.Ct., at 568, or of the "unilateral activity of another party or a third person," ***Helicopteros Nacionales de Colombia, S.A. v. Hall***, *supra*, 466 U.S., at 417, 104 S.Ct., at 1873. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. ***McGee v. International Life Insurance Co.***, *supra*, 355 U.S., at 223, 78 S.Ct., at 201; *see also **Kulko v. California Superior Court***, *supra*, 436 U.S., at 94, n. 7, 98 S.Ct., at 1698, n. 7. Thus where the defendant "deliberately" has engaged in significant activities within a State, ***Keeton v. Hustler Magazine, Inc***., *supra*, 465 U.S., at 781, 104 S.Ct., at 1481, or has created "continuing obligations" between himself and residents of the forum, ***Travelers Health Assn. v. Virginia***, 339 U.S., at 648, 70 S.Ct., at 929, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

***Burger King Corp.***, 471 U.S. at 475-76, 105 S.Ct. at 2184 (footnotes omitted). In ***Humphreys v. Selvey***, No. W2002-02788-COA-R3-CV 2004 WL 948788 (Tenn. Ct. App. Nov. 15, 2004) (perm. app. denied 11/15/04), this Court evaluated the contacts between a South Carolina defendant and the forum state to determine whether personal jurisdiction existed for fraudulent and tortious conduct in connection with a single contract made outside the State of Tennessee. The ***Humphreys*** Court relied upon a five-part test that expanded upon the criteria used in ***Masada***, *see supra*. The five-part test used by the ***Humphreys*** Court evaluates: (1) the quantity of the contacts between the defendant and the forum state; (2) the nature and quality of those contacts; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in adjudicating the dispute; and (5) the convenience of the forum state to the parties. This lawsuit arises out of the alleged

disclosure of trade secrets and confidential information. Mr. Runciman argues that Lucite's claims do not arise out of a business transaction within Tennessee, nor any tortious act within Tennessee, nor from any contract involving Tennessee. In determining whether Mr. Runciman's assertions are correct, we apply the ***Humphreys*** five-prong analysis to the facts of this case.

The first two prongs of the test look at the quantity and quality of Mr. Runciman's contacts with the State of Tennessee. It is undisputed that Mr. Runciman was a resident of Tennessee for approximately five years prior to his relocation. From the record, Mr. Runciman moved to Texas after he submitted his resignation to Lucite and after he allegedly tried to remove the confidential documents and after he allegedly attempted to remove the red reference book containing phone numbers of Lucite's customers. In addition, the record reflects that Mr. Runciman submitted a change-of-address form to the United State Post Office after he resigned from Lucite but while he was still residing in Tennessee. This change-of-address form requested that all Lucite mail with Mr. Runciman's name on it be forwarded to his residence. Lucite asserts that Mr. Runciman's change-of-address request was a wrongful act in that it would have resulted in company information, including confidential information, being diverted to Mr. Runciman. In addition, Mr. Runciman admits in his deposition that his new employer is a competitor of Lucite's and that the new employer has conducted business in Tennessee in the past and currently conducts business in Shelby County. Mr. Runciman deposition indicates that in his new position with Dianal America, Inc. he may very well continue to have business contacts in Tennessee. Furthermore, in his deposition, Mr. Runciman concedes that he still maintains a bank account in Tennessee, to wit:

> Q. Okay. And do you have charge accounts anywhere?
>
> A. I've got a bank account.
>
> Q. Where?
>
> A. Well, I've got one in Houston and still got the one open in Tennessee.
>
> Q. Where is that?
>
> A. First Tennessee.
>
> \*                       \*                       \*
>
> Q. Has it got money in it?
>
> A. Yes.
>
> Q. How much?

A. Probably $25,000.

Furthermore, the record reflects that before Mr. Runciman sold his residence and left the State of Tennessee, Lucite advised him orally and in writing of the existence of his 1996 employment agreement containing the restrictive covenants and that Lucite viewed those covenants to be enforceable:

17. On September 10, 2003 [the day Mr. Runciman resigned from Lucite but before the October 10, 2003 finalization of the sale of his residence], I [Wyndham Draper, Vice-President of Sales/Marketing for Branded Products at Lucite] reminded Defendant of his confidentiality agreement and the need to honor and abide by its terms.

18. A letter was sent to his new employer on September 20, 2003, indicating the existence of the 1996 employment agreement, with a copy being sent to Defendant at his residence at 8930 Enton Cove, Germantown, TN.

The third prong of the *Humphreys* test evaluates the relationship between Mr. Runciman's contacts with the State of Tennessee and the cause of action. As discussed above, Mr. Runciman lived and worked in Tennessee for approximately five years. The activities at the heart of Lucite's claim involve Mr. Runciman's removal of confidential information from their offices located in Tennessee.

The fourth element looks at the interest of the forum state in adjudicating the dispute. Lucite's business headquarters is located in Shelby County. Mr. Runciman's actions, as alleged by Lucite, will have a direct bearing on Lucite's business interests, many of which are located in Tennessee. Lucite has alleged that Mr. Runciman's actions are in direct violation of the Tennessee Trade Secrets Act. Tennessee has an interest in enforcing the laws of the State.

The last element looks at convenience of the forum state to the parties. As noted above, Lucite's headquarters are located in Shelby County. Mr. Runciman was a resident of Shelby County for approximately five years and the cause of action arose here (i.e. alleged violation of the Tennessee Trade Secrets Act and alleged breach of Mr. Runciman's employment agreement). Consequently, witnesses, documents and information are here. Furthermore, any injury sustained to Lucite will occur here.

From all of the above, it is evident that Mr. Runciman could reasonably anticipate being haled into court in Tennessee. Not only did Mr. Runciman voluntarily enter into his employment agreements but he was also informed verbally and in writing that Lucite was determined to enforce same. Consequently, under the Tennessee long-arm statute and the authority outlined above, personal jurisdiction lies in this case.

For the foregoing reasons, we reverse the Order of the trial court granting Mr. Runciman's Tenn. R. Civ. P. 12.02 Motion for lack of personal jurisdiction. We remand this matter for such further proceedings as may be necessary. Costs of this appeal are assessed against the Appellee, Peter Runciman.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.